**BREAD POLITICAL ACTION COMMIT-
TEE et al., Plaintiffs-Appellants,**

v.

**FEDERAL ELECTION COMMISSION et
al., Defendants-Appellees.**

No. 78–1150.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 8, 1978.

Decided Jan. 12, 1979.

---

**30**

Jeffrey N. Cole, Chicago, Ill., for plaintiffs-appellants.

Charles N. Steele, Federal Election Commission, Washington, D. C., for defendants-appellees.

Before FAIRCHILD, Chief Judge, and SWYGERT and TONE, Circuit Judges.

SWYGERT, Circuit Judge.

This interlocutory appeal requires us to construe the extraordinary provision for expedited judicial review of the Federal Election Campaign Act, as amended, 2 U.S.C. §§ 431 *et seq.* Plaintiffs-appellants are a number of trade associations and their political action committees. The defendants are the Federal Election Commission, the Secretary of the Senate, the Clerk of the House, the members of the Commission, and the Attorney General. The plaintiffs seek to challenge the constitutionality of various provisions of the Act which they say restrict their financial activities in the political arena. The issue on this appeal is whether these plaintiffs may invoke the expedited review provision, § 437h,[1] and have their constitutional challenges certi-

fied for initial review by this court sitting en banc.

After filing their complaint in the district court, plaintiffs moved, under § 437h, for immediate certification to this court of the constitutional questions presented. The district court held a hearing and rendered an oral decision denying the motion to certify. The court construed § 437h to restrict the availability of expedited review to the three types of plaintiffs listed in the first sentence of § 437h(a): "[t]he [Federal Election] Commission, the national committee of any political party, or any individual eligible to vote [in a Presidential election]." The court held that since "the plaintiffs in this action do not fall within the group specified in § 437h, . . . they are not entitled to . . . expedited review . . . .." The district court did not dismiss the action, however, holding that it did have jurisdiction over appellants' claims under its ordinary federal question jurisdiction, 28 U.S.C. § 1331.

Plaintiffs then moved for the district court to certify the question of whether appellants were plaintiffs entitled to invoke § 437h for interlocutory appeal under 28 U.S.C. § 1292(b). The district court granted that motion and this court granted appellants' subsequent motion for leave to take this appeal.

## I.

Construction of § 437h must begin with the language of the statute itself. Subsec-

---

1. 2 U.S.C. § 437h provides:

§ 437h. Judicial review.—Actions, including declaratory judgments, for construction of constitutional questions; eligible plaintiffs; certification of such questions to courts of appeals sitting en banc

(a) The Commission, the national committee of any political party, or any individual eligible to vote in any election for the office of President of the United States may institute such actions in the appropriate district court of the United States, including actions for declaratory judgment, as may be appropriate to construe the constitutionality of any provision of this Act. The district court immediately shall certify all questions of constitutionality of this Act to the United States court of appeals for the circuit involved, which shall hear the matter sitting en banc.

Appeal to Supreme Court; time for appeal

(b) Notwithstanding any other provision of law, any decision on a matter certified under subsection (a) of this section shall be reviewable by appeal directly to the Supreme Court of the United States. Such appeal shall be brought no later than 20 days after the decision of the court of appeals.

Advancement on appellate docket and expedited disposition of certified questions

(c) It shall be the duty of the court of appeals and of the Supreme Court of the United States to advance on the docket and to expedite to the greatest possible extent the disposition of any matter certified under subsection (a) of this section.

tion (a) of § 437h is the provision for instituting actions for review of the Act and for certifying constitutional questions to the court of appeals sitting en banc. Subsection (a) provides:

> (a) The Commission, the national committee of any political party, or any individual eligible to vote in any election for the office of President of the United States may institute such actions in the appropriate district court of the United States, including actions for declaratory judgment, as may be appropriate to construe the constitutionality of any provision of this Act. The district court immediately shall certify all questions of constitutionality of this Act to the United States court of appeals for the circuit involved, which shall hear the matter sitting en banc.

It is clear that the plaintiffs here do not fall within any of the three types of plaintiffs described in the first sentence of subsection (a). The question is, therefore, whether Congress intended to exclude all other plaintiffs from invoking the provisions of § 437h by naming the three types found in the statute. The district court so held and the defendants support that position on this appeal. The plaintiffs, on the other hand, contend that the purpose of § 437h is to provide expedited review of all challenges to any of the provisions of the Act and that Congress intended to expand notions of standing to achieve that purpose. They conclude that the purpose for naming the three types of plaintiffs specified was not to exclude other plaintiffs, but to remove any doubt that the specified plaintiffs would have standing.

The language of subsection (a) supports the plaintiffs' construction. The first sentence itself, after specifying three types of eligible plaintiffs, authorizes suits "to construe the constitutionality of *any provision* of this Act" (emphasis added). This language indicates that Congress intended that constitutional challenges could be brought in the federal courts under § 437h against every part of the Act. On the other hand, if the specification of the three types of plaintiffs limits the use of § 437h to those plaintiffs, it is unlikely that every provision

of the Act could be challenged under § 437h. This case illustrates the point.

The plaintiffs in this case seek to challenge provisions of the Act which regulate the activities of trade associations. If these plaintiffs cannot invoke § 437h to challenge these provisions, it is doubtful that anyone could do so. This is so because in enacting subsection (a), Congress could not grant the specified plaintiffs standing beyond the limits of Article III. Thus, even the specified plaintiffs would have to show a sufficient "personal stake" in the outcome of such a suit to satisfy constitutional "case or controversy" requirements. *Buckley v. Valeo*, 424 U.S. 1, 11–12, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). In a suit like this one—challenging provisions regulating trade associations and their political action committees—it is unlikely that any of the specified plaintiffs could show any "personal stake" in the outcome. If not, under the district court's construction, § 437h would be unavailable to challenge the provisions challenged here and the apparent Congressional intent to provide expedited review to attack "any provision" of the Act would be subverted.

The second sentence in subsection (a) contains additional support for the plaintiffs' position. That sentence requires the district court to "certify *all* questions of constitutionality of this Act" (emphasis added) to the court of appeals sitting en banc. This language further focuses Congress' intent on the questions presented in a suit such as this, rather than on the identity of the plaintiffs. The direction to certify all constitutional questions indicates again that Congress intended the expedited review procedure to apply broadly to challenges to the Act.

■ Reading the two sentences together, we find an expressed Congressional intent that § 437h apply to all questions of the constitutionality of any provision of the Act. As noted above, this purpose would be severely restricted if the first sentence is read as an exclusive grant of standing to the three specified plaintiffs to obtain expedited review.

Further support for the plaintiffs' position is found in the overall structure provid-

ed in the Act for judicial determination of questions arising under the act. Section 437h provides for actions brought specifically to decide the constitutionality of the Act. Section 437g contains procedures for enforcement of the Act.[2] A comparison of the schemes for review under §§ 437g and 437h shows the difficulty with the district court's construction of § 437h.

Under § 437g, either the Commission[3] or an individual[4] may bring a civil action in a district court to enforce the Act. The decision in such an action may be appealed to the court of appeals, but will only be reviewed by the Supreme Court on a writ of certiorari.[5] Under § 437g(a)(11), an enforcement action must be advanced on the calendar of each court ahead of all other

2. U.S.C. § 437g provides, in pertinent part:
Enforcement—Practice and procedure
   (a)(1) Any person who believes a violation of this Act or of chapter 95 or chapter 96 of Title 26 has occurred may file a complaint with the Commission. . . .
   (2) The Commission, upon receiving a complaint under paragraph (1), and if it has reason to believe that any person has committed a violation of this Act or of chapter 95 or chapter 96 of Title 26, or, if the Commission, on the basis of information ascertained in the normal course of carrying out its supervisory responsibilities, has reason to believe that such a violation has occurred, shall notify the person involved of such alleged violation and shall make an investigation of such alleged violation in accordance with the provisions of this section.
   (3)(A) Any investigation and paragraph (2) shall be conducted expeditiously and shall include an investigation, conducted in accordance with the provisions of this section, of reports and statements filed by any complainant under this subchapter, if such complainant is a candidate. . . .
   (5) . . .
   (B) If the Commission is unable to correct or prevent any such violation by . . . informal methods, the Commission may, if the Commission determines there is probable cause to believe that a violation has occurred or is about to occur, institute a civil action for relief, including a permanent or temporary injunction, restraining order, or any other appropriate order, including a civil penalty which does not exceed the greater of $5,000 or an amount equal to the amount of any contribution or expenditure involved in such violation, in the district court of the United States for the district in which the person against whom such action is brought is found, resides, or transacts business.
   (C) In any civil action instituted by the Commission under subparagraph (B), the court may grant a permanent or temporary injunction, restraining order, or other order, including a civil penalty which does not exceed the greater of $5,000 or an amount equal to the amount of any contribution or expenditure involved in such violation, upon a proper showing that the person involved has engaged or is about to engage in a viola-

tion of this Act or of chapter 95 or chapter 96 of Title 26.

   .      .      .      .      .

   (9)(A) Any party aggrieved by an order of the Commission dismissing a complaint filed by such party under paragraph (1), or by a failure on the part of the Commission to act on such complaint in accordance with the provisions of this section within 90 days after the filing of such complaint, may file a petition with the United States District Court for the District of Columbia.
   (B) The filing of any petition under subparagraph (A) shall be made—
   (i) in the case of the dismissal of a complaint by the Commission, no later than 60 days after such dismissal; or
   (ii) in the case of a failure on the part of the Commission to act on such complaint, no later than 60 days after the 90-day period specified in subparagraph (A).
   (C) In any proceeding under this paragraph the court may declare that the dismissal of the complaint or the action, or the failure to act, is contrary to law and may direct the Commission to proceed in conformity with such declaration within 30 days, failing which the complainant may bring in his own name a civil action to remedy the violation involved in the original complaint.
   (10) The judgment of the district court may be appealed to the court of appeals and the judgment of the court of appeals affirming or setting aside, in whole or in a part, any such order of the district court shall be final, subject to review by the Supreme Court of the United States upon certiorari or certification as provided in section 1254 and Title 28.
   (11) Any action brought under this subsection shall be advanced on the docket of the court in which filed, and put ahead of all other actions (other than actions brought under this subsection or under section 437h of this title). . . .

3. 2 U.S.C. § 437g(a)(5)(B).

4. 2 U.S.C. § 437g(a)(9).

5. 2 U.S.C. § 437g(a)(10). Subdivision (10) also provides for review by the Supreme Court by the certification procedure of 28 U.S.C. § 1254(3).

cases, save those filed under § 437h. Since challenges to the Act could be raised as defenses in such an enforcement proceeding, § 437g provides an alternative method for obtaining judicial review of the Act. Such defensive challenges to the Act could be on either constitutional or non-constitutional grounds. And since the entire enforcement proceeding would be advanced on the calendar of each court hearing the matter, both constitutional and non-constitutional challenges raised as defenses would receive this partially expedited review.

In contrast, § 437h provides that an action brought expressly to challenge the Act on constitutional grounds should receive the even more expedited review outlined in that section and that such actions may be taken to the Supreme Court by direct appeal. And § 437g(a)(11) makes it clear that Congress intended § 437h actions to take precedence even over enforcement proceedings.

The district court's construction would add a third method for reviewing the Act. Under that construction, the present plaintiffs' constitutional challenge would not be reviewed under either of the statutorily expedited methods. It would proceed through normal three-tier review under ordinary federal question jurisdiction. Thus, *non-*constitutional challenges in enforcement proceedings would receive more expeditious review than would *constitutional* challenges brought by plaintiffs other than the three specified in § 437h(a). While Congress could have discerned differences in the need for expedited review among constitutional challenges raised by different parties, it is difficult to conceive a rationale for viewing any non-constitutional challenge as more urgent than one raising constitutional questions, regardless of the identity of the plaintiffs. Moreover, there is no indication in

the language of the statute that Congress did in fact perceive a greater need for speed or ultimate Supreme Court review of constitutional questions raised by the specified plaintiffs than constitutional questions raised by others.

Based on the language of § 437h and the overall scheme of judicial review provided in the Act, we hold that § 437h applies to these plaintiffs' constitutional challenge to certain provisions of the Act and that they may invoke the expedited review provision. As we have noted, the language used and the nature of the review mechanism provided in § 437h show a Congressional intent to allow speedy judicial review of all possible constitutional challenges to any provision of the Act and to make certain that such challenges would be decided by the Supreme Court. Thus three Congressional purposes are clear: comprehensive review, speedy review, and ultimate review by our highest court of constitutional challenges to the Act. The district court's construction that Congress intended to restrict standing to invoke § 437h to the specified plaintiffs is inconsistent with these expressed purposes.

There is no indication in the language of the statute of any intent to exclude any plaintiffs who have standing under traditional rules. In our view, Congress intended to expand the limits of standing under § 437h to the extent possible under Article III. This intent is wholly consistent with the expressed purposes of the statute. Under this view, Congress' purpose for naming the three types of plaintiffs found in subsection (a) was to insure, within constitutional limits, their standing to raise constitutional challenges to the Act. Congress may well have entertained doubts about the standing of the specified plaintiffs to challenge many of the Act's provisions.[6] And

**6.** At oral argument, counsel for both sides agreed that without their enumeration in § 437h(a), serious questions could be raised about the standing of each of the specified plaintiffs. The standing of the Commission to challenge the constitutional validity of the statute it was created to enforce may have been doubted on the basis of conflicting case law. Older cases held that an agency or officer has

no standing in the federal courts to challenge the statute the agency or officer is bound to enforce. *Columbus & Greenville R. Co. v. Miller*, 283 U.S. 96, 51 S.Ct. 392, 75 L.Ed. 861 (1931); *Stewart v. City of Kansas City*, 239 U.S. 14, 36 S.Ct. 15, 60 L.Ed. 120 (1915); *Marshall v. Dye*, 231 U.S. 250, 34 S.Ct. 92, 58 L.Ed. 206 (1913); *Braxton County Court v. West Virginia*, 208 U.S. 192, 28 S.Ct. 275, 52 L.Ed. 450

Congress apparently thought that it was important that those plaintiffs, in addition to others with obvious personal interest in the restrictions imposed by the Act,[7] be allowed to test the constitutionality of the Act. Each of the specified plaintiffs has a generalized interest in the operation of the entire Act, which may not have provided standing under the prudential rules of the federal courts, see *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), but which Congress may have deemed sufficiently important, due to the central role of each specified plaintiff in the election process, to justify a Congressional grant of standing.[8] *Warth v. Seldin, id.* at 501.

## II.

The sparse legislative history of § 437h adds little to the analysis of its purpose.[9] As to case law, the decisions in *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) *aff'g in part and rev'g in part,* 171 U.S.App.D.C. 172, 519 F.2d 821 (1975), strongly support our construction of § 437h. In *Buckley,* the original plaintiffs included four individuals and the following organizations: the Committee for a Constitutional Presidency—McCarthy '76, the Conservative Party of the State of New York, the Mississippi Republican Party, the Libertarian Party, the New York Civil Liberties Union, the American Conservative Union,

(1908); *Smith v. Indiana,* 191 U.S. 138, 24 S.Ct. 51, 48 L.Ed. 125 (1903). *See also Akron Bd. of Ed. v. Bd. of Ed. of Ohio,* 490 F.2d 1285, 1296 (6th Cir. 1974) (Weick, J., dissenting). The authority of these cases is now questionable, although they have not been overruled. *See Bd. of Ed. v. Allen,* 392 U.S. 236, 241 n.5, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968); *City of New York v. Richardson,* 473 F.2d 923, 933 (2nd Cir. 1973); *Aguayo v. Richardson,* 473 F.2d 1090, 1100 (2nd Cir. 1973). *See generally* Hart and Wechsler, The Federal Courts and The Federal System 182 (2d ed. 1973).

Congressional doubts about the standing of political parties and voters may have been based on the fact that challenges to much of the Act by such plaintiffs might be viewed as asserting either "a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens" or the rights of third parties. Such a view might lead to a finding of no standing under prudential rules. *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975).

7.  Persons with this kind of interest in the Act would include candidates and the plaintiffs in this case due to the direct regulation of their conduct by the Act. This direct action of the statute upon such persons brings them squarely within traditional notions of standing to assert the invalidity of the imposed restrictions.

8.  It should be noted that the doubts about standing discussed here are distinguished from those expressed earlier regarding the standing of the specified plaintiffs to undertake the challenges asserted by the plaintiffs here. There it was doubted whether the specified plaintiffs could show a sufficient personal stake to have standing in the constitutional sense to attack those provisions. If not, § 437h could not be invoked by anyone to mount such an attack if the district court's narrow reading of the statute were accepted. Here we discuss doubts

possibly held by Congress under prudential standing rules, as to the standing of the specified plaintiffs to seek review of any provision of the Act. It is clear from *Warth, supra,* that Congress had the power to remove any such doubts and to grant standing to the limits of Article III.

9.  Only two references to § 437h in the debates over the Act have been cited by the parties or found by our research. In introducing the amendment which added § 437h, Senator Buckley said:

    [I]t is a modification that I am sure will prove acceptable to the managers of the bill. It merely provides for the expeditious review of the constitutional question I have raised. I am sure we will all agree that if, in fact, there is a serious question as to the constitutionality of this legislation, it is in the interest of everyone to have the question determined by the Supreme Court at the earliest possible time.

    120 Cong.Rec. 10562 (1974). And in the House, Representative Frenzel said:

    I believe within this conference report there are at least 100 items questionable from a constitutional standpoint. Any time we pass legislation in this field we are causing constitutional doubts to be raised.

    . . .

    I do call the attention of the gentleman to the fact that any individual under this bill has a direct method to raise these questions and to have those considered as quickly as possible by the Supreme Court.

    120 Cong.Rec. 35140 (1974). Neither statement addresses the issue of who may invoke § 437h and who may not; both merely restate the purposes expressed in the statute that review be speedy and that the questions be answered by the Supreme Court.

the Conservative Victory Fund, and Human Events, Inc. It is clear that few, if any, of these organizations could be classified as the "national committee of any political party" so as to fit within the specified groups in § 437h. The district court in *Buckley*, in certifying the case to the court of appeals, impliedly read § 437h as the district court here did, as an exclusive grant of standing to the parties specified. The *Buckley* court held that the four individual plaintiffs had standing and explicitly left to the court of appeals the question of the standing of the organizational plaintiffs.[10]

The court of appeals, however, expressed no similar reservations about the standing of the organizational plaintiffs and remanded the case to the district court for the taking of necessary evidence and certification of resulting constitutional questions, without dismissing any of the named plaintiffs. Moreover, the court of appeals granted leave to intervene to three more organizations, the Center for Public Financing of Elections, Common Cause, and the League of Women Voters, none of which even arguably fit within the groups specified in the statute. Finally, in its opinion on the merits, the court of appeals described § 437h as "a broad grant of legislative standing to sue . . ." and considered only whether that grant was so broad as to violate the

Article III case or controversy requirement, without reference to the standing of the organizational plaintiffs still present in the case. 519 F.2d at 850–851.[11]

The strongest authority for our decision is the Supreme Court's treatment of the standing issue in *Buckley*. After noting the presence of the organizational parties to the case, the Court turned to the issue of jurisdiction and said:

> It is clear that Congress, in enacting [§ 437h], intended to provide judicial review to the extent permitted by Art. III. In our view, the complaint in this case demonstrates that at least some of the appellants have a sufficient "personal stake"[10] in a determination of the constitutional validity of each of the challenged provisions . . . . .

424 U.S. at 11–12, 96 S.Ct. at 631. Footnote 10 from the quoted part of the opinion stated in part: "This Court has held, for instance, that an organization 'may assert, on behalf of its members, a right personal to them to be protected from compelled disclosure . . . of their affiliation.' *NAACP v. Alabama*, 357 U.S. 449, 458, 78 S.Ct. 1163, 1170, 2 L.Ed.2d 1488 (1958). . . ." We cannot read the quoted language as other than a clear holding that Congress intended to expand traditional no-

---

**10.** After holding that the individual plaintiffs had standing to seek review under § 437h, the district court said:

> It is not so clear, however, that each of the five organizational plaintiffs possesses the same requisite standing. This is so because obviously none is eligible to vote for the office of President in any election. It is unclear, in the present procedural posture of plaintiffs' case, whether any of the named organizational plaintiffs may be "the national committee of any political party" within the meaning of the relevant statute. Since at least some of the plaintiffs have the requisite standing, and since the ultimate decision as to the standing of others may have to await further exploration, in the interests of time, this Court defers to the Court of Appeals on that issue.

*Buckley v. Valeo*, 387 F.Supp. 135, 142 n.14 (D.D.C.1975).

**11.** We are aware that two members of the D.C. Circuit appear to have since espoused a narrow construction of the standing granted by § 437h. *See Clark v. Valeo*, 182 U.S.App.D.C. 21, 40, 559 F.2d 642, 661 (1977) (Leventhal, J., concurring); *id.* 182 U.S.App.D.C. at 46 and 53, 559 F.2d at 667 and 674 (Robinson, J., dissenting). We regard these apparent views as inconsistent with the position taken by the whole court in *Buckley* in accepting all of the original plaintiffs and in allowing intervention by other organizations. Cf. *Clark, id.* 182 U.S.App.D.C. at 32–36, 559 F.2d at 653–657 (Tamm, J., concurring) (three judges discussed the standing of the United States to invoke § 437h without reference to the list of plaintiffs in the statute and concluded that the United States lacked standing because it could not show any "injury in fact" to satisfy Art. III.)

tions of standing to the limits of Article III. And footnote 10 makes it clear that organizations may have standing under § 437h if they otherwise meet the requirements for "associational standing." *See Hunt v. Washington Apple Advertising Commission,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).[12]

■ In sum, the decisions in *Buckley* fully support our construction of § 437h(a) and our holding that the plaintiffs in this case have standing to invoke its expedited review procedure.

### III.

The district court, because of its jurisdictional stance, refused to certify any constitutional questions raised by the complaint. In addition, counsel for the defendants represented at argument that there are disputed fact issues in the case. For these reasons, the case will be remanded to the district court for the certification required by § 437h(a). On remand the district court should: (1) identify the constitutional and fact issues raised by the complaint; (2) take whatever evidence the court finds necessary to a decision of those issues; (3) make findings of fact; and (4) certify the assembled record and the constitutional questions arising therefrom to this court for decision pursuant to § 437h. The district court should, of course, expedite the above procedures to the greatest possible extent.

The order of the district court denying certification under 2 U.S.C. § 437h(a) is reversed and the case is remanded for further proceedings consistent with this opinion.

TONE, Circuit Judge, concurring.

If it were not for *Buckley v. Valeo,* 424 U.S. 1, 11–12, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), I would have more doubt about the meaning of the statutory language than is expressed in the opinion of this court. The view adopted by the Supreme Court in that case, however, governs us, and I therefore concur in the judgment.

---

12. We have held recently that a trade association had "organizational standing" to challenge local ordinances authorizing inspection of meat delivery vehicles, applying the test set out in *Hunt, supra. Chicago-Midwest Meat Association v. City of Evanston,* 589 F.2d 278 (7th Cir. 1978). It is clear that some of the trade associations here also satisfy the *Hunt* test. The complaint alleges that the challenged provisions of the Act violate the First Amendment rights of the organizations and their members, some of whom are individuals, by interfering with the organizations' ability to gather and expend funds to express their views on political matters. From this it appears that (1) the individual members of the organizations would have standing under § 437h and could show a personal stake in the constitutional questions raised; (2) the First Amendment questions are germane to the political purposes of the organizations here; and (3) since the complaint seeks only declaratory and injunctive relief, participation of the individual members is not required. *See Chicago-Midwest Meat Association, supra,* 589 F.2d at 280–281.