**MINEOLA STATE BANK et al., Appellants,**

v.

**The FIRST NATIONAL BANK OF MINEOLA, Appellee.**

No. 12840.

Court of Civil Appeals of Texas, Austin.

Nov. 22, 1978.

Rehearing Denied Dec. 13, 1978.

John L. Hill, Atty. Gen., Thomas A. Rutledge, Asst. Atty. Gen., Austin, for State Banking Board of Texas.

Larry E. Temple, Austin, for Mineola State Bank.

Joe R. Long, Gary Evatt, Long, Evatt & Webber, Austin, for appellee.

PHILLIPS, Chief Justice.

Pursuant to a hearing, the State Banking Board concluded that the application for charter of the Mineola State Bank met all the requirements of law and approved the application.

Thereafter, appellee appealed to the district court contesting the validity of the Board's order. Following trial, the court below entered judgment reversing the order of the Board and remanding the case with instructions to deny the charter application of appellants.

We reverse the judgment of the trial court and render judgment reinstating the order of the Banking Board.

I.

Under the provisions of Tex.Rev.Civ.Stat. Ann. art. 342–305 (1973), the Banking Board must make affirmative findings on the following statutory provisions before approving a new state bank charter: (1) a public necessity exists for the proposed

bank; (2) the proposed capital structure is adequate; (3) the volume of business in the community where such proposed bank is to be established is such as to indicate a profitable operation of the proposed bank; (4) the proposed officers and directors have sufficient banking experience, ability, and standing to render success of the proposed bank probable; and (5) the applicants are acting in good faith.

■ The Banking Board found all of these elements in appellants' favor and so stated in its order. The primary question before us is whether the Banking Board's affirmative findings on the ultimate issues of public necessity and the existence of a sufficient volume of business for profitable operation,[1] in addition to the findings of underlying fact pertinent thereto, are supported by substantial evidence. Appellants, by appropriate points of error, have raised these questions for our consideration and we sustain their position.

The Supreme Court of Texas has defined public necessity within the meaning of article 342–305, as being a substantial or obvious community need for the proposed bank in the light of attendant circumstances, as distinguished from a mere convenience on the one hand, or an absolute or indispensable need on the other. *Gerst v. Nixon*, 411 S.W.2d 350 (Tex.1966).

■ This appeal of the Board's record is to be judged by the substantial evidence standard of review which provides, in one acceptable definition, that the administrative decision is to be upheld if reasonable minds could have reached the same conclusion reached by the administrative agency from the evidence in the record. *First National Bank, Grapevine v. State Banking Board*, 419 S.W.2d 878 (Tex.Civ.App.1967, writ ref'd n. r. e.).

Bearing in mind the admonition of Tex. Rev.Civ.Stat.Ann. art. 6252–13a, § 16(b) (1978) (Administrative Procedure Act), that a final decision of an administrative agency must include findings of fact and conclusions of law, separately stated, and that findings of fact, if set forth in statutory language, must be accompanied by a concise and explicit statement of the underlying facts supporting the findings, we turn to the Commissioner's order. We believe, despite findings by the trial judge and appellee's contentions, that the order was in compliance with the requirements of section 16(b). See our opinion in *Mutual Building and Loan Association v. Lewis*, 572 S.W.2d 771 (Tex.Civ.App.1978).

After stating the ultimate findings in the statutory language required by article 342–305, the Board made extensive findings of the required underlying facts. A summary of these findings follows. There are 223 separate subscribers to the stock of appellants and eighty percent of these stockholders reside within the community to be served by it. This, according to the testimony of appellants' expert witness, Dr. James R. Vinson, shows widespread support from persons who are willing not only to support the bank by spoken word but also to invest their money in the future of that bank and its ultimate success. Dr. Vinson expressed the opinion that the community to be served would consist, primarily, of the southwest part of Wood County but would also include parts of Rains, Van Zandt, and Smith Counties inasmuch as the city of Mineola is not far from the county line.

With respect to economic and demographic information pertaining to Wood County, Dr. Vinson stated that Mineola, as well as Wood County as a whole, has a diversified economic base as evidenced by the various industry categories. Dr. Vinson did not furnish this information in detail with respect to Rains, Van Zandt, and Smith Counties, but expressed the opinion that each of these counties presented an economic and demographic picture similar to that of Wood County.

Overall total earnings increased in Wood County from $29,536,000 in 1970 to $42,646,- 000 in 1974. Farm earnings continue to be a significant portion of the overall earnings of Wood County; however, in addition,

---

1. There seems to be no dispute as to the requirements of 2, 4, and 5 of article 342–305.

there is manufacturing and mining, including oil and petroleum products, as well as lignite with concentrations both near the surface and deep below the surface. Also, there are transportation, communication, and public utilities which form significant industrial blocks for the county. The Missouri-Pacific Railroad has its headquarters as well as a large maintenance center in Mineola. There are also finance, insurance, and real estate services located within the area to be served.

The order proceeds with underlying facts demonstrating growth in Wood County population, employment, total farm marketings, crude oil production (mainly reflected by monetary growth rather than production), income, and city sales taxes. Substantial growth in the assets of Mineola Federal Savings and Loan Association, as well as substantial increases in the deposits of appellee First National Bank of Mineola, were described.

The Board stated in its order the fact that the First National Bank of Mineola is the only bank located in the community to be served and noted that the lack of a local banking competitive alternative to appellee First National Bank was an important factor in its determination to approve appellants' charter. It concluded that, from the overall record, there is both a potential volume of deposit business and a potential volume of loan business to indicate profitable operation of the bank sought by appellants.

■ Appellants' application for the new bank was vigorously contested, and although there is an abundance of evidence of a substantial nature which would have reasonably supported an order denying applicants' charter, there is, as well, evidence to reasonably support the order entered. It is in such situations that the expertise of the Board is employed with conclusive effect.[2] We also recognize the recent statement of the Supreme Court in *Lewis v. Metropolitan Savings and Loan Association,* 550 S.W.2d 11, 13 (Tex.1977), that: "In practical result,

it has not taken much evidence under our decisions to qualify as substantial. In fact, the evidence may be substantial and yet greatly preponderate the other way." We need not address appellants' point relative to the inadequacy of Dr. Vinson's survey inasmuch as we find substantial evidence upholding the order separate and apart from the survey.

## II.

■ As most of the evidence introduced by appellants in support of their charter was presented through Dr. Vinson, we must notice appellee's point complaining that Dr. Vinson's opinions with reference to the factual evidence introduced are not credible because of some suggested inconsistent testimony given by him in a prior case relative to another geographic area. The Board found Dr. Vinson's analysis of the economy of the area to be served to be credible, reliable, and supported by the overall record, and so stated in its order. Counsel for appellee was given the full latitude of cross examination to test this expert's methodology and credibility. Dr. Vinson stated the reasons why, in his opinion, the two areas (several hundred miles apart) were different, and obviously explained these differences to the Board's satisfaction. Appellee's own expert witness testified on cross examination that he could neither agree nor disagree with Dr. Vinson's conclusion in the earlier case, because the data introduced in the current record did not provide a complete picture of the previous case. It is within the province of the Board to determine from the overall record the credibility of the witnesses before it and the weight to ascribe to their testimony.

The judgment of the trial court is reversed and judgment is here rendered reinstating the order of the Banking Board.

---

2. See this Court's opinion in *State Banking Bd. v. Airline Nat'l Bank,* 398 S.W.2d 805 (Tex.Civ. App.1966, writ ref'd n. r. e.).