STATE BANKING BOARD, et al., Appellants,

v.

FIRST STATE BANK OF GAINESVILLE, et al., Appellees.

No. 13349.

Court of Civil Appeals of Texas, Austin.

June 24, 1981.

Rehearing Denied July 29, 1981.

Mark White, Atty. Gen., Patrick Lanier, Asst. Atty. Gen., Larry Temple, Austin, for appellants.

Conrad P. Werkenthin, Gary Evatt, Clark, Thomas, Winters & Shapiro, Austin, for appellees.

ON MOTION FOR REHEARING

PHILLIPS, Chief Justice.

We withdraw the opinion of April 15, 1981, and substitute the following opinion.

This is a suit for judicial review of the order of the State Banking Board approving the charter application for the proposed North Texas Bank and Trust to be located in Gainesville, Cooke County, Texas. The trial court invalidated the order and appellants have perfected their appeal to this Court.

We reverse the judgment of the trial court and render judgment affirming the order of the State Banking Board granting the charter application to appellant North Texas Bank and Trust.

The organizers of North Texas Bank and Trust made application to the State Banking Board for a new bank to be located in Gainesville, Texas. A protest to the application was filed by appellees, First State Bank of Gainesville and Gainesville National Bank, and a hearing was held before the State Banking Board hearing officer in September of 1979.

From a review of the record,[1] the State Banking Board concluded that North Texas Bank and Trust met all the requirements of law and should be approved. Therefore, by order dated December 17, 1979, the appellant State Banking Board approved the North Texas Bank and Trust charter.

Thereafter, appellees instituted an appeal from the Board's order in district court contesting the validity of the order. The

---

1. This appeal is to be decided upon the record which was made before the State Banking Board. *Imperial American Resources Fund,* *Inc. v. Railroad Comm'n,* 557 S.W.2d 280 (Tex. 1977).

court reversed the Board and set aside the order.

## I.

■ Appellants' first point of error and, in our judgment, the principal question involved in the case, is that the trial court erred in concluding and holding that two directors approved by the Board were automatically disqualified from serving as directors of appellant bank because of the provisions of the Depository Institution Management Interlocks Act.[2]

Appellees maintain, and the trial court agreed, that certain interlocking bank directorships are prohibited by federal law inasmuch as the "Interlocks Act," cited above, provides that:

"A management official [statutorily defined to include a director] of a depository institution . . . may not serve as a management official of any other depository institution . . . *not affiliated therewith* if an office of one of the institutions . . . is located within . . . any city, town, or village . . . adjacent thereto." 12 U.S.C. § 3202 (emphasis added).

Two of the six proposed directors of appellant bank, Lowell T. Miller and Mildred Selyer, are also directors of Valley View National Bank in Valley View which is approximately seven miles from the city limits of Gainesville. Appellant bank is not an affiliate of Valley View National Bank or any other financial institution.

Appellee contends as a consequence of the current disqualification of the two above-named directors to serve on the Board, by virtue of the Interlocks Act, appellant bank has only four named directors plus a proposed but unnamed and unknown president. Appellees further maintain that inasmuch as the Texas Banking Code[3] requires that every state bank "have not less than five (5)" directors able to serve at the time the Board acts upon the charter application, the proposed bank charter must fail. We think not.

In the first place, and in our judgment, the short answer to this question is that Tex.Rev.Civ.Stat.Ann. art. 342–305 (1973) requires the State Banking Board of Texas to make affirmative findings on the following statutory provisions before approving a new bank charter: a public necessity exists for the proposed bank; the proposed capital structure is adequate; the volume of business in the community where such proposed bank is to be established is such as to indicate a profitable operation of the proposed bank; the proposed officers and directors have sufficient banking experience, ability, and standing to render success of the proposed bank probable; and last, the applicants are acting in good faith.

The trial court engrafted a new requirement for charter approval onto the Texas Banking Code: whether the organizing directors meet the standards of the federal authorities to serve on the board of more than one bank. That additional standard cannot be added judicially. *State Banking Board v. Valley National Bank*, 604 S.W.2d 415 (Tex.Civ.App. 1980, writ ref'd n.r.e.).

In the second place, the "Interlocks Act" is a very long and comprehensive statute passed by Congress and authorized by Congress to be implemented by rules and regulations to be prescribed by the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, the Board of Directors of the Federal Deposit Insurance Corporation, the Federal Home Loan Bank Board and the National Credit Union Administration.[4] It would serve no useful purpose to set out in detail the various provisions of the Act itself or the rules and regulations heretofore prescribed by the agencies outlined above.

Although we have not been furnished with any judicial authority interpreting this new federal act and accompanying regulations, several clear factual conclusions can be reached from an examination of the statutes and regulations. Not all interlocks are prohibited; the Act is administered by

---

2. 12 U.S.C. §§ 3201–07 (Supp. 1980) (effective March, 1979).

3. Tex.Rev.Civ.Stat.Ann. art. 342–404 (1973).

4. 12 U.S.C. § 3207 (Supp. 1980).

the federal regulatory agencies; broad latitude of discretion is granted these federal agencies as to which interlock will be permitted and which ones will be precluded; and there is no way to determine in advance what action will be taken by the federal regulatory agencies on a particular application or a particular set of facts.

Obviously, the Board had no way to predetermine what action would be taken by the federal regulatory authorities so it proceeded, as required by statute, to determine whether the proposed organizing directors met the qualification requirements for approval under state law. For the Board to have adopted the position advanced by appellees, it would have had to assume that the charter applicants would not get the federal approval. It is well settled that presumptions of illegal or improper activity cannot be entertained. *Lewis v. Davis*, 145 Tex. 468, 199 S.W.2d 146 (1947); *First National Bank of Jacksonville v. First State Bank of Jacksonville*, 291 S.W. 206 (Tex.Comm'n App. 1927, jdgmt adopted).

Our holding in this respect has been followed by the Colorado courts in analogous situations. *See Banking Board v. Columbine State Bank*, 569 P.2d 871 (Colo. 1977); *Academy Boulevard Bank v. Banking Board*, 492 P.2d 76 (Colo.App. 1971).

Due to our position on appellants' point number one, we do not reach their second point.[5]

### II.

Appellees bring two cross points. The first cross point alleges the trial court erred in failing to hold that the Banking Board's ultimate findings of public necessity and profitable operation are not reasonably supported by substantial evidence in view of the reliable and probative evidence in the record as a whole.

The Supreme Court of Texas has defined public necessity within the meaning of the statute [6] as being "a substantial or

obvious community need for the proposed [bank] in the light of attendant circumstances, as distinguished from a mere convenience on the one hand and an absolute or indispensable need on the other." *Gerst v. Nixon*, 411 S.W.2d 350, 358 (Tex. 1966). These are the basic standards to be applied.

Appellees have characterized appellants' effort as an attempt "to begin a new commercial bank between a car wash and a pizza hut on the flood plain in a trailer house in Gainesville, with three of the four legal directors of the bank residents of Tarrant County, Texas." Appellees then contend that their three directors have subscribed 45% of the stock proposed for the bank in question. Appellees argue that an application so structured is not in the public interest and not likely to meet a friendly welcome in Gainesville and Cooke County.

This may well be. However, the order of the Board is tested by the substantial evidence rule where the administrative decision is to be upheld if reasonable minds could have reached the same conclusion reached by the administrative agency from the evidence in the record. *Mineola State Bank v. First National Bank of Mineola*, 574 S.W.2d 246 (Tex.Civ.App. 1978, writ ref'd n.r.e.). Stated another way, the administrative decision is not to be reversed unless it is shown that the administrative agency acted arbitrarily and capriciously, and totally without regard to the facts in evidence before it. *Chemical Bank & Trust Co. v. Falkner*, 369 S.W.2d 427 (Tex. 1963).

The record before us contains a transcript of the hearing before the Board of 276 pages plus 26 separate exhibits submitted to the Board by the charter applicants and 8 exhibits submitted by appellees. In *State Banking Board v. Airline National Bank*, 398 S.W.2d 805 (Tex.Civ.App. 1966 writ ref'd n.r.e.), this Court held that there may be evidence of a substantial nature that would have reasonably supported an order denying the charter as well as an

---

5. Appellants' point of error No. 2: The trial court erred in concluding and holding that the Texas Banking Code requires that a state bank charter application must have at least five

named and known directors qualified to serve at the time the State Banking Board acts.

6. Tex.Rev.Civ.Stat.Ann. art. 342–305 (1973).

abundance of evidence reasonably supporting the order entered. This Court went on to state that "[i]t is in such situations that the expertise of the Board is employed with conclusive effect." *Id.* at 816.

Appellees' arguments against the granting of the charter were made to the Board and were rejected. The Board found favorably on all of the statutory requirements for public necessity and buttressed these findings with an elaborate statement of underlying facts in support of its ultimate findings. Briefly, the Board found that the growth and development of Gainesville and Cooke County have now reached the stage where it would be in the public interest to establish a new banking competitor in this market place. The Board then found that the population growth in the area and job market portend healthy future economic growth. We hold that the Board's ultimate findings of public necessity and profitable operation are reasonably supported by substantial evidence.

Appellees' second cross point alleges that the district court erred in failing to hold the order in litigation invalid because certain underlying facts, with respect to the issues of public need and profitable operation, were based upon the report of a Banking Department field examiner's report which only one of the members of the Board read.

Appellants argue that appellees have failed to preserve their second cross point in that they failed to include the alleged errors in their motion for rehearing as required by the Administrative Procedure and Texas Register Act (APTRA), Tex.Rev.Civ. Stat.Ann. art. 6252–13a § 16(e) (Supp. 1980–81), and *United Sav. Ass'n of Texas v. Vandygriff*, 594 S.W.2d 163 (Tex.Civ.App. 1980, writ ref'd n.r.e.). The State Banking Board's order stated that the Board had "examined the evidence and exhibits" in reaching their decision. It was not until after the case was appealed to the district court did the appellees discover that two Board members had not read the report. Section 19(d)(3) of APTRA permits the dis-

trict court to receive evidence of procedural irregularities that are not reflected in the record. In such a situation, a point of error or cross point alleging such procedural irregularities, not reflected in the record, is not waived by the failure to include it in the motion for rehearing filed with the agency.

■ Nevertheless, we overrule appellees' second cross point. Board members do not have to read every word contained in the record. It is sufficient for them to read the testimony given before the hearing examiner and then review "only those exhibits or portions thereof necessary to clarify the testimony of the witnesses." *Lampasas Federal Savings & Loan Association v. Lewis*, 558 S.W.2d 913, 915 (Tex.Civ.App. 1977, no writ). Under those circumstances, the agency members have "read the record" within the meaning of Section 15 of Article 6252–13a . *Id.*

■ All the members of the State Banking Board stated, in answers to interrogatories, that they had read the oral testimony that was presented before the hearing examiner. Board members Perry and Stewart stated that they "reviewed only those exhibits or portions thereof necessary to clarify the testimony offered by the witnesses." These two members voted in favor of the complained of portions of the order.[7] Only a majority of the Board need "read the record" if that majority voted for the order. *Citizens Bank of Bryan v. First State Bank*, 580 S.W.2d 344 (Tex. 1979).

■ Appellees claim that the rule stated in *Lampasas Federal* is not applicable because the unread report formed the basis of a finding of fact. We do not decide this question because if there was any error in this case, it was harmless.

The exhibit that was not read was a field investigation report. In the Board's order it was stated:

"Understandably, the opponent banks would prefer not to have any additional

---

7. All three members of the Board voted in favor of all parts of the order except Stewart who dissented only on the points on which he be-

lieved the federal interlocking directors statutes applied.

bank charter approved at this time. Their position is probably best summed up in the following statement contained in the field investigation report conducted for the Board by Banking Examiner Michael Bryant: 'The two existing banks in Gainesville, Texas, generally contend Gainesville could handle another bank in two or three years, but they would not like to see a new bank of any kind at this time.' "

The observation that existing banks oppose the creation of a new bank is not a finding of fact necessary or required for the granting of a charter for a new bank. It also does not form the basis for any other necessary findings of fact or conclusions of law. If the Banking Board erred in using this quote, it was harmless error.

We reverse the judgment of the trial court and render judgment affirming the order of the State Banking Board granting the charter application.

Reversed and Rendered on Motion for Rehearing.

POWERS, J., not sitting.