982 S.W.2d 650 (1998)
Alton McDANIEL, Appellant,
v.
TEXAS NATURAL RESOURCE CONSERVATION COMMISSION, Appellee.
No. 03-98-00057-CV.
Court of Appeals of Texas, Austin.
December 17, 1998.
*651 David Frederick, Amy Johnson, Henry, Lowerre, Johnson, Hess & Frederick, Austin, for Appellant.
Dan Morales, Atty. Gen., Nancy E. Olinger, Asst. Atty. Gen., Austin, for Appellee.
Before Justices JONES, B.A. SMITH and YEAKEL.
LEE YEAKEL, Justice.
Appellant Alton McDaniel ("McDaniel") appeals the trial court's decision to grant summary judgment and render a final judgment in favor of appellee Texas Natural Resource Conservation Commission ("TNRCC"). McDaniel contends that the TNRCC does not have authority to allow solid waste disposal by registration, and, even if such authority exists, the notice given by the TNRCC did not comply with TNRCC rules. We will affirm the trial court's judgment.

BACKGROUND
Cary Juby ("Juby") applied to the TNRCC to register a site in Burnet County upon which he intended to beneficially apply sewage sludge. Juby acknowledged in his application that he did business as "Cap. Tex. Waste Service." The TNRCC sent notice of the application to the county judge of Burnet County and to the landowners adjacent to the proposed disposal site. This notice did not specify that Juby was associated with Cap. Tex. Waste Services. The TNRCC later approved the application and issued a written sludge registration. No contested case hearing was held prior to the issuance of this registration.
McDaniel resides on land adjacent to the proposed sludge disposal site and timely filed a motion for reconsideration of the registration, which was overruled by operation of law. McDaniel then filed suit in district court pursuant to section 5.351(a) of the Texas Water Code, seeking to set aside the TNRCC's decision to issue the registration.[1]See Tex. Water Code Ann. § 5.351 (West 1988). At trial, McDaniel and the TNRCC filed cross-motions for summary judgment. The trial court denied McDaniel's motion and granted the TNRCC's, rendering a final judgment in favor of the TNRCC.

DISCUSSION
When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review the summary-judgment evidence presented by both sides and determine all questions presented. See Commissioners Court of Titus County v. Agan, 940 S.W.2d 77, 81 (Tex.1997); Jones v. Strauss, 745 S.W.2d 898, 900 (Tex.1988). The reviewing court should then render such judgment as the trial court should have rendered. See Agan, 940 S.W.2d at 81.
Registration versus Permitting
McDaniel questions whether the Solid Waste Disposal Act (the "Act"), Tex. Health & Safety Code Ann. §§ 361.001-.510 (West 1992 & Supp.1999), gives the TNRCC authority to allow sewage sludge disposal by registration. Stated another way, the issue is whether the TNRCC must go through the general permitting process before allowing the disposal of sewage sludge.
Agencies may only exercise those powers that are specifically given them by statute. See Sexton v. Mount Olivet Cemetery Ass'n, 720 S.W.2d 129, 137 (Tex.App.-Austin 1986, writ ref'd n.r.e.). However, agencies also have implied powers to do that which is necessary to carry out the specific powers delegated, for the legislature intended a workable and effective exercise of the *652 powers expressly and specifically granted the agency. See id. at 137-39 (full extent of power specifically granted agency must be ascertained with due regard for rule that legislature intends agency should have, by implication, such authority as may be necessary to carry out specific powers delegated). In order to ascertain the legislative intent with regard to the Act and determine the authority it grants to the TNRCC, we look to the statute as a whole. See Citizens Bank of Bryan v. First State Bank, 580 S.W.2d 344, 348 (Tex.1979) ("The cardinal rule in statutory interpretation and construction is to seek out legislative intent from a general view of the enactment as a whole").
The sewage sludge at issue in this case is municipal solid waste. See Tex. Health & Safety Code Ann. § 361.003(20) (West Supp. 1999) (defining municipal solid waste as "solid waste resulting from or incidental to municipal, community, commercial, institutional, or recreational activities").[2] The Act governs the management and control of solid waste materials in this state, including sewage sludge. See North Alamo Water Supply Corp. v. Texas Dep't of Health, 839 S.W.2d 448, 449 (Tex.App.-Austin 1992, writ denied).
Throughout the Act, the TNRCC is given the authority to administer the act using different levels of regulation, including both permitting and registration.[3] With the exception of hazardous municipal waste (which the sewage sludge at issue here is not),[4] the TNRCC is given broad jurisdiction to control all aspects of the management of municipal solid waste consistent with its powers and duties under the Act:
(a) The [TNRCC] is responsible under this section for the management of municipal solid waste ... and shall coordinate municipal solid waste activities....
(b) The [TNRCC] shall accomplish the purposes of this chapter by controlling all aspects of the management of municipal solid waste ... by all practical and economically feasible methods consistent with its powers and duties under this chapter and other law.
(c) The [TNRCC] has the powers and duties specifically prescribed by this chapter relating to municipal solid waste management ... and all other powers necessary or convenient to carry out those responsibilities under this chapter.
Tex. Health & Safety Code Ann. § 361.011 (West Supp.1999) (emphasis added). The Act also specifically gives the TNRCC authority to issue permits for municipal solid waste disposal in its general permitting section: "Except as provided by 361.090 with regard to certain industrial solid waste, the commission may require and issue permits authorizing and governing the construction, operation, and maintenance of solid waste facilities used to store, process, or dispose of solid waste." Id. § 361.061 (emphasis added).
McDaniel argues that the general permitting section establishes that the TNRCC can either establish a permitting process or implement no regulation at all for sewage sludge disposal. We do not agree that the legislature intended an "all or nothing" approach to the disposal of solid waste. The policy of the Act as a whole is to "safeguard the health, welfare, and physical property of the people and to protect the environment by controlling the management of solid waste." Tex. Health & Safety Code Ann. § 361.002(a) (West 1992) (emphasis added). McDaniel's argument that the Act charges the TNRCC to provide no regulation for the disposal of *653 sewage sludge is inconsistent with this policy. Failure to regulate would certainly not safeguard the health, welfare and physical property of the citizens of this state, nor would such failure protect the environment. Moreover, if the legislature intended the TNRCC to only issue permits when regulating municipal solid waste, it could have so mandated, as it has done in other areas. See id. § 361.002(b) (requiring the TNRCC to go through a permitting process when managing and controlling hazardous waste).[5] Because we decline to give a mandatory meaning to the clearly permissive language of section 361.061, we conclude that the TNRCC is not required to implement a permitting process in its regulation of the disposal of sewage sludge.
The Act gives the TNRCC general authority over municipal solid waste, allowing the agency to control and manage all aspects of municipal solid waste by all practical means as long as such methods are consistent with its powers and duties under the Act. See Tex. Health & Safety Code Ann. § 361.011 (West Supp.1999). The TNRCC exercised its authority in the present case by establishing and administering a registration process. Pursuant to TNRCC's own properly promulgated rules, several steps are generally required for a registration to be issued. An applicant must notify the TNRCC in writing that land application for beneficial use activities are planned and submit information that will enable the TNRCC to determine whether such activities comply with its rules.[6]See 30 Tex. Admin. Code § 312.12(a) (1998). The TNRCC can approve an applicant's request only after reviewing it in light of its rules governing sewage sludge dispersal, which require among other things, certain limits on the concentration of metals, restrictions on available sites, and several specific actions for bulk sewage sludge treatment. See id. §§ 312.12(b), .42. If the TNRCC approves the request, it must mail notice of this decision to the county judge in the county where the proposed disposal site is located and to adjacent landowners. See id. § 312.13(c). Any dissatisfied person can provide written comments to the TNRCC and file a motion for reconsideration of the decision. See id. § 312.13(d).
The TNRCC acted in compliance with its own properly promulgated rules and issued the requested registration.[7] McDaniel received notice of the TNRCC's action and filed a motion for reconsideration. Therefore, although registration is a less stringent form of regulation than permitting, the TNRCC provided reasonable protection to McDaniel by allowing him an opportunity to protest the TNRCC's decision. We find that the TNRCC's establishment of a registration process to regulate the disposal of sewage sludge was reasonable and consistent with its powers and duties under the Act.
Notice to McDaniel
McDaniel next asserts that the notice issued by the TNRCC did not comply with TNRCC rules. Under its rules regarding registration, the TNRCC is required to mail notice of the application to adjacent landowners specifying, inter alia, the name and affiliation of the applicant. See 30 Tex. Admin. Code § 312.13(c) (1998). In this case, the application for registration stated that Juby did business as Cap. Tex. Waste Service. However, the notice given to the adjacent landowners, including McDaniel, failed to mention Cap. Tex. Waste Service.[8]
*654 When an agency fails to follow its own rules, reversal and remand is required if a showing of harm or prejudice is made. See Imperial Am. Resources Fund, Inc. v. Railroad Comm'n, 557 S.W.2d 280, 288 (Tex. 1977).[9] In this case, no harm or prejudice has been shown as a result of the TNRCC's failure to provide notice of Juby's affiliation with Cap. Tex. Waste Service, nor has his affiliation been shown to be relevant or material to any issue before the TNRCC. McDaniel, in his motion for summary judgment, admits that he had actual knowledge of this affiliation. Moreover, he used this information in his motion to reconsider the registration, acknowledging Juby's affiliation with Cap. Tex. Waste Service. We therefore find that McDaniel had actual notice of Juby's affiliation and was neither harmed nor prejudiced by the TNRCC's failure to provide such information in its notice to him.
Notice to Other Adjacent Landowners
McDaniel also urges that other adjacent landowners did not express their concerns because they did not receive notice that Juby was affiliated with Cap. Tex. Waste Service.[10] However, McDaniel does not have standing to assert the interest of a third party who allegedly was never given notice of the applicant's affiliation. See Smith v. Houston Chem. Serv., Inc., 872 S.W.2d 252, 273 (Tex.App.-Austin 1994, writ denied) (opponent to Texas Water Commission's issuance of permit could not be prejudiced by permit applicant's failure to notify another person); see also Copher v. First State Bank, 852 S.W.2d 738, 740 (Tex.App.-Fort Worth 1993, no writ) (judgment debtor has no standing to assert interest of party who allegedly was never given notice of hearing); American Operating Co. v. Railroad Comm'n, 744 S.W.2d 149, 155 (Tex.App.-Houston [14th Dist.] 1987, writ denied) (unit owner had no standing to challenge royalty interest lessor's lack of notice of hearing); Murmur Corp. v. Board of Adjustment, 718 S.W.2d 790, 793 (Tex.App.-Dallas 1986, writ ref'd n.r.e.) (subsequent purchaser had no standing to complain of lack of notice to former owner). We therefore decline to address this issue.

CONCLUSION
Because the Act allows the TNRCC to authorize sewage sludge disposal by registration and McDaniel was not harmed or prejudiced by the TNRCC's failure to provide notice of Juby's affiliation with Cap. Tex. Waste Service to McDaniel, we affirm the judgment of the trial court.
NOTES
[1] Juby has appeared in this case as amicus curiae asserting that this Court lacks jurisdiction because McDaniel failed to join him as a party to this action when he had been a party before the TNRCC. See Tex. Gov't Code Ann. § 2001.176(b)(2) (West 1998). We reject this argument. This case was brought pursuant to the Texas Water Code, and thus service on Juby was not required. See Tex. Water Code Ann. § 5.351(a) (West 1988).
[2] Solid waste is defined, in pertinent part, as "garbage, rubbish, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility, and other discarded material, including solid, liquid, semisolid, or contained gaseous material ... and from community and institutional activities." Tex. Health & Safety Code Ann. § 361.003(34) (West Supp. 1999) (emphasis added).
[3] The permitting process allows certain individuals to request a contested case hearing, while the registration process does not. See 30 Tex. Admin. Code § 312.13(b), (c) (1998).
[4] Hazardous municipal waste is municipal solid waste identified or listed as hazardous waste by the administrator of the United States Environmental Protection Agency. See Tex. Health & Safety Code Ann. §§ 361.003(2) and 361.003(20) (West Supp.1999).
[5] In other instances the legislature has mandated registration in the Act. See Tex. Health & Safety Code Ann. § 361.0861 (West Supp.1999) (requiring a registration process when a solid waste management facility applies for recycling, waste separation, energy and material recovery, or gas recovery).
[6] Such information may include, but is not limited to: (1) a description of the sludge at issue and how it will be disposed; (2) the process generating the sewage sludge; (3) the characteristics of the soil and subsurface conditions where the operation will be located; (4) a map of the land under the applicant's control and the location of the adjacent landowners; and (5) analytical results showing the concentration of metals and nutrients taken from the soil of the land to be applied. See 30 Tex. Admin. Code § 312.12(a) (1998).
[7] The parties dispute whether the notice mailed to adjacent landowners complied with TNRCC rules. We address this issue in our discussion of the second issue presented.
[8] We will presume for purposes of this discussion that Juby's connection with Cap. Tex. Waste Service constitutes an "affiliation" as provided by the rules.
[9] In Imperial American Resources Fund, Inc. v. Railroad Commission, 557 S.W.2d 280, 288 (Tex. 1977), the Railroad Commission failed to follow its own rules requiring notice to the parties regarding material that would be judicially noticed. See id. at 288. The supreme court found that there was no harm or prejudice because the material that the Commission judicially noticed was not necessary to the Commission's order and was immaterial to its consideration of the case. See id. at 288-89.
[10] We note that a copy of the application was sent with the notice to the county judge of Burnet County. The application did reflect the affiliation.