**6th & NECHES, L.L.C., Appellant,**

v.

**Elden ALDRIDGE in his Official Capacity as Secretary/Clerk of the City of Austin; City of Austin; and Cambridge Tower Condominiums Council of Owners, Appellees.**

No. 03–98–00649–CV.

Court of Appeals of Texas, Austin.

May 6, 1999.

Mark Cohen, Austin, for appellant.

G. Michael Lawrence, Graves, Dougherty, Hearon & Moody, Austin, for Cambridge.

Chester, E. Beaver, Asst. City Atty., Austin, for City of Austin & Elden Aldrige.

Before Chief Justice ABOUSSIE, Justices KIDD and PATTERSON.

JAN P. PATTERSON, Justice.

Appellant 6th and Neches, L.L.C. filed a petition for writ of mandamus seeking to compel the City of Austin ("City") and its secretary, Elden Aldridge, to enact a zoning change.[1] The trial court denied appellant's request. We will affirm the trial court judgment.

## THE CONTROVERSY

Appellant owns property at 17th and Lavaca in Austin. The property is zoned for downtown mixed use ("DMU"); thus, the maximum height of buildings on the property is limited to one hundred and twenty feet. See Austin City Code § 13-2-630 (1999). Appellant applied for a variance from the zoning ordinance to permit the construction of a taller building. Municipal law requires that a majority of the City Council ("Council") approve a request for a variance at three separate meetings. Id. §§ 2-2-3, 13-1-406(d).

At the first two meetings, a majority of the Council approved the proposed variance. Before the third meeting, the Coun-

cil received letters protesting the variance from the General Services Commission ("Commission") and the State Preservation Board ("Board").[2] Both letters stated in part that "[t]he only existing protection for Capitol views from the hills and freeways around Austin is the City of Austin's 120 foot DMU zoning. We see no public purpose significant enough to begin a trend towards waiving the 120 foot restriction." The Commission's letter was signed by Carl Mullen, a deputy executive director of the Commission. The Board's letter was signed by Governor George W. Bush, Lieutenant Governor Bob Bullock, and Speaker of the House of Representatives Pete Laney, all members of the Board.

The Local Government Code ("Code") requires the affirmative vote of at least three-fourths of the members of the Council in the event a proposed change to a zoning regulation is protested by owners of at least 20 percent of either: (1) the area of the lots or land covered by the proposed change; or (2) the area of the lots or land immediately adjoining the area covered by the proposed change and extending 200 feet from that area. See Tex. Loc. Gov't Code Ann. § 211.006(d) (West 1988). The parties stipulated that the State of Texas owns at least 20 percent of the land immediately adjoining the area covered by the proposed change and extending 200 feet from that area, thereby satisfying the requirements of section 211.006(d)(2) of the Code.

On the third reading of the proposed change, the Council voted 5 to 2 in favor of the variance. Because the final vote failed to meet the three-fourths requirement, the City did not enact the proposed zoning change. Appellant sought a writ of mandamus to compel the City to authorize the variance. The trial court denied appel-

---

**1.** Cambridge Tower Condominiums Council of Owners ("Cambridge") intervened at the trial court. Cambridge owns land adjacent to the area covered by the proposed change. As the interests of Cambridge, the City of Austin, and Elden Aldridge do not diverge in this

case, we will refer to the parties collectively as the City.

**2.** The Commission and the Board are state agencies. See Tex. Gov't Code Ann. §§ 443.001 (West 1998), 2152.001.

lant's request, concluding that the letters constituted a proper protest; therefore, the vote of five Council members in favor of the change was insufficient to approve the zoning change.

## DISCUSSION AND HOLDINGS

The single issue in this appeal is whether the letters sent to the Council by the Commission and the Board were properly submitted and constituted a proper protest of the proposed zoning change under the provisions of the Code. Appellant argues that the trial court erred in denying its petition for writ of mandamus because: (1) both the Commission and the Board acted beyond the scope of their legal authority in protesting appellant's proposed zoning change and (2) the State employees who signed the protest letters acted without authority. The parties stipulated that if none of the persons who signed the letters had authority to sign, the City must authorize the proposed change.

■ Agencies such as the Commission and the Board are creatures of the legislature and have no inherent power; rather, they possess only those powers that are specifically given them by statute. *See McDaniel v. Texas Natural Resource Conservation Comm'n*, 982 S.W.2d 650, 651 (Tex.App.—Austin 1998, pet. denied) (citing *Sexton v. Mount Olivet Cemetery Ass'n*, 720 S.W.2d 129, 137 (Tex.App.—Austin 1986, writ ref'd n.r.e.)). It is undisputed that neither the Commission nor the Board is expressly granted the power to protest an application by a private landowner to receive a zoning variance.

■ Lack of express authority for a particular act of an agency does not mean that the agency has no authority to act. *See Texas Dep't of Human Servs. v. Christian Care Ctrs., Inc.*, 826 S.W.2d 715, 719 (Tex.App.—Austin 1992, writ denied). An agency may have implied authority to take an action even though such authority might not be expressly enumerated in its enabling statute. *Id.* Agencies have the

implied authority reasonably necessary to accomplish a delegated purpose. *Id.; see also Sexton*, 720 S.W.2d at 137 ("[T]he Legislature generally intends that an agency should have by implication such authority as may be *necessary* to carry out the specific power delegated, in order that the statutory purpose may be achieved.") (emphasis in original). We must discern the legislature's intent by looking to the statute as a whole and construing any questioned part of the statute to give effect to the legislative purpose. *See McDaniel*, 982 S.W.2d at 652 (citing *Citizens Bank of Bryan v. First State Bank*, 580 S.W.2d 344, 348 (Tex.1979) ("The cardinal rule in statutory interpretation and construction is to seek out the legislative intent from a general view of the enactment as a whole.")).

■ The legislature has expressly granted to the Commission "charge and control of all state buildings, grounds, and property," and authorized the Commission to protect state property from "damage, intrusion, or improper use." Tex. Gov't Code Ann. § 2165.001(a)(3) (West 1999). The legislature has expressly authorized the Board to "preserve, maintain, and restore the Capitol, the General Land Office Building, their contents, and their grounds." *Id.* § 443.007 (West 1998). Appellant contends that the duty of the Commission and the Board to protect and preserve state buildings does not make it necessary for the agencies to protest a private property owner's proposed zoning change. The City argues that because the agencies have implied authority to do that which is necessary to accomplish a delegated purpose, both the Commission and the Board were authorized to protest appellant's proposed variance.

■ The Commission is the custodian of state property and holds title for the State to property adjacent to the area covered by appellant's proposed zoning change. *Id.* § 2165.001. While there is no evidence in the record of precisely how the zoning change would impact the Capitol or

other state properties, an owner of property meeting the requirements of section 211.006(d) of the Code is not required to marshal evidence in support of its protest. After reviewing the Commission's enabling statute, we conclude that the express authority given the Commission to protect state property from damage, intrusion, or improper use necessarily includes the implied authority to object to zoning changes that might adversely impact state property. Likewise, the Board, as the state agency entrusted with the preservation and maintenance of the Capitol, has legal authority to protest zoning changes that may have a detrimental impact on views of the Capitol. We overrule appellant's first point of error.

■ Having determined that the Commission and the Board have the authority to protest appellant's request for a zoning change, we now must decide whether the persons who signed the protest letters had the authority to do so. The Commission is composed of six members appointed by the governor to set policy, and to employ and direct an executive director. *See* 1 Tex. Admin. Code § 111.1(a) (1998). The executive director manages the day-to-day business of the Commission, employs staff, and carries out other duties and responsibilities as assigned by law or delegated by the Commission. *Id.* The executive director is assisted by three associate deputy directors. *See* Tex. Gov't Code Ann. § 2152.104 (West 1999).

Neither the Commission's enabling statute nor the administrative rules adopted pursuant to the statute delegate the power to issue a protest letter to either the Commission or its executive director. However, a resolution approved by the Commission at a March 28, 1995 open meeting and in effect at all times relevant to this appeal grants to the executive director power to perform all necessary acts pursuant to the statutorily defined responsibilities of the Commission. Moreover, the resolution authorizes the executive director to "delegate authority to Commission staff to carry out

any of the responsibilities and duties herein delegated to the executive director" and declares that deputy directors may be assigned the duty of managing the affairs of the Commission in the absence of its executive director.

We hold that the executive director had the authority to issue a protest letter pursuant to the Commission's responsibility to protect state property from damage. The executive director testified that although he was absent when the protest letter was executed and delivered, deputy director Mullen was empowered to sign the Commission's letter in his absence. We hold that this was a proper delegation of authority; therefore, deputy director Mullen had the authority to issue the letter protesting appellant's proposed zoning change.

■ The Board consists of the governor, lieutenant governor, speaker of the house of representatives, one senator appointed by the lieutenant governor, one representative appointed by the speaker of the house of representatives, and one member appointed by the governor. *See* Tex. Gov't Code Ann. § 443.003(a) (West 1998). The governor serves as chairman of the board, and the lieutenant governor and the speaker of the house serve as co-vice chairpersons. *See* 13 Tex. Admin. Code § 111.2, .3 (1998). The executive committee of the Board consists of the chairman and the co-vice chairpersons. *Id.* § 111.4. As the chief governing members of the Board, Governor Bush, Lieutenant Governor Bullock, and Speaker Laney unquestionably possessed the authority to sign a protest letter on behalf of the Board. We overrule appellant's second point of error.

## CONCLUSION

Because the Commission and the Board properly submitted letters protesting appellant's proposed zoning change, a three-fourths vote of the Council was required to enact the zoning change. Because the variance received less than a three-fourths

vote, the City's refusal to enact the zoning change was proper. We affirm the judgment of the trial court.

