## CHICAGO–MIDWEST MEAT ASSOCIATION, Plaintiff-Appellant,

v.

## CITY OF EVANSTON et al., Defendants-Appellees.

### No. 78–1468.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 26, 1978.

Decided Dec. 14, 1978.

As Amended Dec. 22, 1978 and Jan. 5, 1979.

John J. Corbett, Chicago, Ill., for plaintiff-appellant.

Charles L. Michod, Chicago, Ill., Ellen J. Alexander, City of Evanston, Evanston, Ill., for defendants-appellees.

Before CUMMINGS, WISDOM * and SPRECHER, Circuit Judges.

WISDOM, Circuit Judge.

This appeal primarily turns on the question whether certain municipal ordinances are invalid because they are preempted by or in conflict with the Wholesome Meat Act of 1967, 21 U.S.C. § 601 *et seq.* We hold that the ordinances are not invalid under that Act. Nor do the ordinances contravene the commerce clause of the United States Constitution.

Chicago-Midwest Meat Association (the association) appeals the denial of its motion for a preliminary injunction and the dismissal of its complaint. We affirm.

## I.

According to the complaint, the association brought this action on behalf of its members—persons, firms, or corporations located in Chicago or the Midwest engaged in manufacturing, processing, and wholesaling meat products appropriate for human consumption. The complaint alleges that all of the association's members are subject to the Wholesome Meat Act of 1967 (the Act), 21 U.S.C. § 601 *et seq.*, and to the regulations promulgated by the Secretary

of Agriculture under authority of the Act. The defendants named in the complaint are municipalities located in northern Illinois that allegedly have enacted ordinances authorizing inspection of meat delivery vehicles. The complaint charges that these ordinances are invalid because they are preempted by the Act.[1] In addition, the complaint suggests, but does not articulate, the contention that the ordinances might impose an impermissible burden on interstate commerce.

The district court determined that the ordinances in question did not conflict with the Act. It then denied the association's motion for a preliminary injunction against enforcement of the ordinances and granted the municipalities' motion to dismiss the complaint for failure to state a claim upon which relief can be granted.

## II.

The municipalities argue that the district court erred when it assumed that the association had standing to bring this action on behalf of its members. We disagree.

In *Hunt v. Washington Apple Advertising Commission*, 1977, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383, the Supreme Court provided a summary of the requirements for "organizational standing":

> [W]e have recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own behalf; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted, nor the relief requested, requires the participation of individual members in a lawsuit.

*See also* 13 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure: Jurisdiction* § 3531, 213–15 (1975) and 45–46 (1978 Supp.); 6A *Moore's Federal Practice* ¶ 57.11, 57–101 n.98 (1974 & 1977–78 Supp.).

---

* The Honorable John Minor Wisdom, Senior Circuit Judge of the United States Court of Appeals for the Fifth Circuit, is sitting by designation.

1. The association does not challenge the authority of the municipalities to inspect the meat delivered by the vehicles operated by its members.

The allegations in the complaint satisfy the three requirements identified in *Hunt.* First, the complaint alleges that health officials of the City of Evanston, one of the defendant municipalities, have stopped and inspected meat delivery trucks operated by members of the association and issued citations for failure to obtain and display municipal licenses required by the Evanston ordinances.[2] The complaint further alleges that the other municipalities have inspected trucks as they were being unloaded at delivery points and have threatened enforcement of their ordinances. This specific pleading of actual and threatened harm would otherwise provide the association's members with standing to challenge the ordinances. *See Sierra Club v. Morton,* 1972, 405 U.S. 727, 738–40, 92 S.Ct. 1361, 31 L.Ed.2d 636. Second, it is clear that one of the purposes of the association, as with any trade association, is to promote the legal welfare of its members. Third, neither the claim that the association makes nor the declaratory and injunctive relief it requests requires the participation of its members in this suit.[3]

### III.

According to the complaint, the delivery vehicle inspections carried out under the authority of the ordinances have injured the members of the association in the past and, unless enjoined, will continue to injure them in the future. The complaint alleges that the municipal officials conduct the inspections by stopping the vehicles while on their delivery routes or by examining them while the meat they carry is being unloaded at a point of delivery. These ordinances are invalid, the complaint asserts, because they are preempted by the Act. In addition, the complaint suggests that these ordinances impose an impermissible burden on interstate commerce. These allegations state a claim upon which relief can be granted. Therefore, the district court technically erred when it dismissed the complaint. That error is of no consequence, however.

The district court stated:

Defendants argue that no effective preemption claim has been stated because the ordinances here in question do not conflict with the quoted portions of the Act. . . . [T]his Court agrees.

Accordingly, defendants' Motion to Dismiss The Complaint is granted.

This passage from the court's opinion makes clear that it believed that there were no triable issues of fact and that, as a matter of law, the Act does not preempt the ordi-

---

**2.** During oral argument before this Court, counsel for the association was asked whether he knew of any specific instances in which officials of one of the Cities stopped and inspected a meat delivery vehicle operated by one of the association's members while it was en route to a delivery point. Though counsel could not cite any specific stop, he stated that he "believed" that at least one delivery vehicle operated by one or another of the members had been stopped and inspected. For purposes of this appeal, and for reasons explained in the remainder of this section of the opinion, we must treat counsel's belief as fact.

During oral argument, counsel for all parties agreed that no criminal charges for violation of these ordinances by delivery vehicles are pending against any of the members of the association. Therefore, the principles of abstention developed in *Younger v. Harris,* 1971, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, do not apply to this case.

**3.** The defendants argue that the association should not be accorded standing because a judgment against it might not be binding upon its members. We see little likelihood that the defendants will suffer the burden of relitigating the claims raised in this case. The *stare decisis* effect of our decision provides the defendants with substantial protection against further litigation. In addition, the defendants would have the opportunity in any case brought by members of the association to argue that the members are bound by the *res judicata* effect of our decision in this case. *Cf. Aluminum Co. of America v. Admiral Merchants Motor Freight, Inc.,* 7 Cir. 1973, 486 F.2d 717, 720–21, *cert. denied,* 414 U.S. 1113, 94 S.Ct. 843, 38 L.Ed.2d 739; *Expert Electric, Inc. v. Levine,* 2 Cir. 1977, 554 F.2d 1227, 1232–35, *cert. denied,* 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190; *Springs Mills, Inc. v. Consumer Product Safety Comm'n,* 1977 D.S.C., 434 F.Supp. 416, 434; Restatement of Judgments §§ 80–85 (1942); Restatement of Judgments [2d] §§ 85–86 (Tent. Draft No. 2, 1975).

nances.[4] That finding called for entry of summary judgment in favor of the defendants, rather than dismissal of the complaint. *See* F.R.Civ.P. 56. Furthermore, in reaching its judgment the district court had before it, and presumably considered, several affidavits of municipal public health officials detailing information about the delivery vehicle inspections. Under F.R.Civ.P. 12(b), this consideration of materials outside the pleadings converted the district court's dismissal into a grant of summary judgment.

■ Under Federal Rules of Civil Procedure 12(b) and 56(c), the district court should have notified the association that it intended to treat the defendant's motion to dismiss as a motion for summary judgment. Furthermore, the court should have allowed the association a reasonable opportunity to establish the existence of material controverted facts. *See Choudhry v. Jenkins,* 7 Cir. 1977, 559 F.2d 1085, 1089, *cert. denied,* 434 U.S. 997, 98 S.Ct. 634, 54 L.Ed.2d 491; *Macklin v. Butler,* 7 Cir. 1977, 553 F.2d 525, 528 (per curiam); *Winfrey v. Brewer,* 8 Cir. 1978, 570 F.2d 761, 764. We call attention to this error for its prophylactic effect in future cases, but the error does not require reversal. If we assume the existence of all the facts alleged by the association, its challenges to the local ordinances fail nonetheless. We have concluded that the supremacy and commerce clauses allow municipalities to enact and enforce ordinances providing for the inspection of meat delivery vehicles at locations other than the premises of establishments regulated by the Act.

### IV.

■ "No simple, mechanical formula can summarize the analysis necessary to determine whether a state statute is void under the supremacy clause." *Great Western United Corp. v. Kidwell,* 5 Cir. 1978, 577 F.2d 1256, 1274 (citing cases). The first inquiry must be whether Congress has prohibited state regulation of the commerce involved in this case:

> [W]hen Congress has "unmistakably . . ordained," *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963), that its enactments alone are to regulate a part of commerce, state laws regulating that aspect of commerce must fall. This result is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.

*Jones v. Rath Packing Co.,* 1977, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604. A federal law that does not exclude all state legislation nonetheless overrides state laws with which it conflicts. U.S.Const. art. VI. To ascertain whether the state law in question is fatally inconsistent with federal law, we must "determine whether . . [it] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress". *Hines v. Davidowitz,* 1940, 312 U.S. 52, 67–68, 61 S.Ct. 399, 404, 85 L.Ed. 581. *See Great Western,* 577 F.2d at 1274–75.

The association does not argue that, by passing the Act, Congress intended to occupy the whole field of meat inspection. Rather, the association asserts that language in the Act clearly conflicts with these local ordinances. To assess this claim, we must first review the applicable provisions of the Act.[5]

Far from intending to preempt the entire field of meat inspection, Congress actually designed the Act to "protect the consuming public from meat and meat food products that are adulterated or misbranded and to assist in efforts by State and other Government agencies to accomplish this objective". 21 U.S.C. § 661(a). In brief, subchapter I of the Act provides meat inspection standards to be enforced by the Secretary of Agriculture. 21 U.S.C. §§ 601–624. Congress

---

4. The district court did not address the commerce clause issue that might be suggested by the complaint.

5. *See generally* Comment, *The Wholesome Meat Act and Intrastate Meat Plants,* 4 Creighton L.Rev. 86 (1970); Note, *The Wholesome Meat Act of 1967,* 2 Suffolk U.L.Rev. 256 (1968).

made a special finding that all products and animals regulated by subchapter I "are either in interstate or foreign commerce or substantially affect such commerce". 21 U.S.C. § 602. Yet to promote the dual goals of consumer protection and localized regulation of meat purity, Congress authorized the Secretary of Agriculture to cooperate with the states in developing and administering state meat inspection programs with requirements that are "at least equal to the provisions of subchapter I" of the Act. 21 U.S.C. § 661. Section 408 of the Act is the only provision relevant to this case that prohibits certain types of state regulation:

> Requirements within the scope of this chapter with respect to premises, facilities and operations of any establishment at which inspection is provided under subchapter I of this chapter, which are *in addition to, or different than* those made under this chapter may not be imposed by any State or Territory or the District of Columbia, except that any such jurisdiction may impose recordkeeping and other requirements within the scope of section 642 of this title, if consistent therewith, with respect to any such establishment.

21 U.S.C. § 678 (emphasis added).

The association argues that the local ordinances under attack in this case—which, we must assume, provide for inspection of meat delivery vehicles either while on their delivery routes or while unloading at the point of delivery—must fall because they are "in addition to, or different" from the inspection requirement of subchapter I of the Act. We disagree.

Under § 408, the states are barred only from developing regulations "in addition to, or different" from federal regulations applicable "to *premises, facilities and operations* of any establishment at which inspection is provided under subchapter I". 21 U.S.C. § 678 (emphasis added). This language demonstrates that state regulation "in addition to, or different" from the federal scheme is impermissible only on the site

of the regulated establishment. The vehicle inspections at issue in this case, of course, occur beyond the premises of the association's members.

█ The association argues that the "operations" of regulated establishments extend beyond their premises. When we consider that word in the context of § 408 we do not believe that Congress intended to give it such an expansive meaning. The legislative history of § 408 confirms our conclusion. In its report on the bill that eventually became the Act, the Senate Committee on Agriculture and Forestry stated:

> Section 408 would exclude States, territories, and the District of Columbia from regulating *operations at plants* inspected under [subchapter] I . . ., but would permit them to impose . . . requirements consistent with Federal provisions as to other matters regulated under the act.

S.Rep. No. 799, 90th Cong., 1st Sess., *reprinted in* [1967] U.S.Code Cong. & Admin. News, pp. 2188, 2207. The Senate Committee's commentary clearly indicates that the states may regulate meat delivery vehicles not on the premises of the regulated establishment so long as the state law is not inconsistent with the Act—that is, so long as it does not stand "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress". *Hines v. Davidowitz*, 312 U.S. at 67–68, 61 S.Ct. at 404. The ordinances at issue here create no such obstacle.

What we have said thus far disposes of the association's remaining assertions on the preemption issue. The association argues that three other provisions—§ 24 of the Act and two regulations promulgated by the Secretary of Agriculture that apply to the loading and transportation of meat, 9 C.F.R. §§ 308.9, 325.1(c) (1978) [6]—preempt the local ordinances at issue in this case. These provisions simply set forth the standards to be used by federal officials carrying out the inspections allowed by the Act

---

6. Section 24 of the Act provides:

The Secretary may by regulations prescribe conditions under which carcasses, parts of carcasses, meat, and meat food products of

cattle, sheep, swine, goats, horses, mules, or other equines, capable of use as human food, shall be stored or otherwise handled by any person, firm, or corporation engaged in the

of facilities and delivery vehicles on the premises of the regulated establishments. By providing for delivery vehicle inspection away from the premises of these establishments, the ordinances at issue here obviously do not conflict with the standards embodied in these provisions.[7]

■ In summary, we conclude that the Act does not explicitly or impliedly preempt these local ordinances. In addition, we up-

hold the ordinances because they are not inconsistent with the Act. Indeed, as the district court pointed out, the ordinances further the purpose of the Act, the protection of the health and welfare of consumers. 21 U.S.C. § 602.[8]

· V.

■ The commerce clause, U.S.Const. art. I, § 8, cl. 3, grants to Congress the

business of buying, selling, freezing, storing, or transporting, in or for commerce, or importing, such articles, whenever the Secretary deems such action necessary to assure that such articles will not be adulterated or misbranded when delivered to the consumer. Violation of any such regulation is prohibited. However, such regulations shall not apply to the storage or handling of such articles at any retail store or other establishment in any State or organized Territory that would be subject to this section only because of purchases in commerce, if the storage and handling of such articles at such establishment is regulated under the laws of the State or Territory in which such establishment is located, in a manner which the Secretary, after consultation with the appropriate advisory committee provided for in section 661 of this title, determines is adequate to effectuate the purposes of this section.
21 U.S.C. § 624.
9 C.F.R. § 308.9 provides:
Products shall be protected from contamination from any source such as dust, dirt, or insects during storage, loading, or unloading at and transportation from official establishments.
9 C.F.R. § 325.1(c) states:
No person, engaged in the business of buying, selling, freezing, storing, or transporting, in or for commerce, meat or meat food products capable of use as human food, or importing such articles, shall transport, offer for transportation, or receive for transportation in commerce or in any State designated under § 331.2 of this subchapter, any such meat or meat food product which is capable of use as human food and is not wrapped, packaged, or otherwise enclosed to prevent adulteration by airborne contaminants, unless the railroad car, truck, or other means of conveyance in which the product is contained or transported is completely enclosed with tight fitting doors or other covers for all openings. In all cases, the means of conveyance shall be reasonably free of foreign matter (such as dust, dirt, rust, or other articles or residues), and free of chemical residues, so that product placed therein will not become adulterated. Any cleaning compound, lye, soda solution, or other chemical used in

cleaning the means of conveyance must be thoroughly removed from the means of conveyance prior to its use. Such means of conveyance onto which product is loaded, being loaded, or intended to be loaded, shall be subject to inspection by an inspector at any official establishment. The decision whether or not to inspect a means of conveyance in a specific case, and the type and extent of such inspection shall be at the Program's discretion and shall be adequate to determine if product in such conveyance is, or when moved could become, adulterated. Circumstances of transport that can be reasonably anticipated shall be considered in making said determination. These include, but are not limited to, weather conditions, duration and distance of trip, nature of product covering, and effect of restowage at stops en route. Any means of conveyance found upon such inspection to be in such condition that product placed therein could become adulterated shall not be used until such condition which could cause adulteration is corrected. Product placed in any means of conveyance that is found by the inspector to be in such condition that the product may have become adulterated shall be removed from the means of conveyance and handled in accordance with § 318.2(d) of this subchapter.

7. This case is clearly distinguishable from *Jones v. Rath Packing Co.*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604. In *Jones*, the Supreme Court held that the challenged state law was preempted because it was "different" from federal standards required by the Wholesome Meat Act. 430 U.S. at 531–32, 97 S.Ct. 1305. Both the state law and the Act regulated the same thing, meat labeling. In contrast, in the case before us the federal law is silent on the subject of state regulation, the condition of delivery vehicles away from the premises of regulated establishments.

8. Inspection of meat delivery vehicles is a useful supplement to inspection of the meat they carry. Even if the vehicles are sanitary when they leave the regulated establishment, it is obvious that the meat they carry can become impure en route to the delivery point in a variety of ways. Indeed, the affidavit of a health

power to regulate "Commerce with foreign Nations, and among the several States". This provision places limits upon state power to regulate commerce over which Congress has primary responsibility. *See, e. g., Great Atlantic and Pacific Tea Co. v. Cottrell*, 1976, 424 U.S. 366, 370–71, 96 S.Ct. 923, 47 L.Ed.2d 55. When Congress passed the Act, it specifically determined that "all articles and animals which are regulated under this chapter are either in interstate or foreign commerce or substantially affect such commerce". 21 U.S.C. § 602. The question, then, becomes whether the local ordinances at issue here contravene the commerce clause.

■■■■ Congress has the power to legitimate state regulation of interstate commerce that would otherwise be impermissible. *Southern Pacific Co. v. Arizona*, 1945, 325 U.S. 761, 769, 65 S.Ct. 1515, 89 L.Ed. 1915. *See generally* P. Brest, *Processes of Constitutional Decisionmaking* 219–22 (1975); G. Gunther, *Cases and Materials on Constitutional Law* 367–71 (9th ed. 1975); L. Tribe, *American Constitutional Law* 402–03 (1978). As our earlier discussion of the plain meaning and legislative history of § 408 of the Act makes clear, Congress intended to allow the states to regulate meat delivery by ordinances such as those at issue here. These ordinances would be valid under the commerce clause, even without such express congressional approval. The ordinances regulate evenhandedly to effectuate a highly legitimate local public purpose, and their effect on interstate commerce is not clearly excessive in relation to the local benefits brought about by their enforcement. *See, e. g., Pike v. Bruce Church, Inc.*, 1970, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174; *Great Western*, 577 F.2d at 1281–86.

Affirmed.

official employed by the Village of Oak Park, one of the defendants, states that his inspections of vehicles have revealed the absence or malfunction of required refrigeration equipment and unsanitary storage of meat.