OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

August 7, 2002

The Honorable Tony Goolsby
Chair, Committee on House Administration
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. JC-0539

Re: Whether a slaughterhouse in Texas that slaughters, processes, possesses, sells, or trans-ports horse-meat to foreign countries to be consumed by humans there violates section 149.002 or 149.003 of the Agriculture Code, and related questions (RQ-0512-JC)

Dear Representative Goolsby:

Under section 149.002 of the Agriculture Code, a person who sells horse-meat as food for human consumption or who possesses horse-meat intending to sell it as food for human consumption commits a criminal offense. See TEX. AGRIC. CODE ANN. § 149.002 (Vernon Supp. 2002); see id. § 149.005 (prescribing penalty). Similarly, under section 149.003, a person who "transfers horse[-]meat to a person who intends to sell" it as food for human consumption or who knows[ or reasonably should know that the person receiving the horse-meat intends to sell it as food for human consumption commits a criminal offense. Id. § 149.003; see id. § 149.005 (prescribing penalty). You ask whether these sections and other portions of chapter 149 "apply to horse slaughter plants in Texas [that] process, possess, sell[,] and transport horse[-]meat to foreign countries as food for human consumption in those countries."[1] Assuming that the plant operators have the requisite intent or knowledge, we conclude that the sections apply.

If we conclude that chapter 149 applies to horse slaughter plants, you ask whether federal law preempts "or in any way limit[s]" prosecution. See Request Letter, supra note 1, at 1. We do not believe that the federal Meat Inspection Act, 21 U.S.C. ch. 12, preempts enforcement of the state statutes. See 21 U.S.C. ch. 12 (2000). You ask finally which state agency has "power to enforce violations of" chapter 149—the Texas Department of Agriculture (the "Department") or some other entity. Request Letter, supra note 1, at 1. The Department has no authority to investigate or assist in prosecuting violations of chapter 149. Rather, local prosecutors may investigate and prosecute alleged violations of chapter 149. The Texas Commissioner of Health also has some authority to

---

[1]Letter from Honorable Tony Goolsby, Chair, Committee on House Administration, Texas House of Representatives, to Honorable John Cornyn, Texas Attorney General (Feb. 13, 2002) (on file with Opinion Committee) [hereinafter Request Letter].

inspect slaughterhouses that kill horses for human consumption, but no authority to prosecute a criminal action under chapter 149.

We understand that, in part because of foot-and-mouth disease in Europe, European countries where humans eat horse-meat are turning to North America for a substitute for beef and lamb. *See* Amy Worden, *Foot-and-Mouth Disease Boosts Demand for U.S. Horse[-]Meat Exports*, PHILADELPHIA INQUIRER, Apr. 25, 2001, *available at* http://www.purefood.org/madcow/horse42501.cfm (last visited July 17, 2002) [hereinafter Worden]; *Demand for horse[-]meat on the rise* (WBTV article), *available at* http://www.wbtv.com/global/Frameset.asp?P=/Global/story.asp?s=338305 [hereinafter WBTV Article]. While many people in this country consider horse-meat "a decidedly unromantic commodity" and even "revolting," it "is considered a delicacy to its devotees in France" and elsewhere. *Air France v. Owens*, 689 F. Supp. 663, 663-64 & n.1 (N.D. Tex.), *aff'd on other grounds*, 845 F.2d 544 (5th Cir. 1988); *Hill Packing Co. v. City of New York*, 56 N.Y.S.2d 548, 550 (N.Y. 1945), *aff'd*, 61 N.Y.S.2d 380 (N.Y. App. Div. 1946). Because of the increased demand, the sale of horses for slaughter has become correspondingly lucrative. *See* Aaron Lake, *1998 Legislative Review*, 5 ANIMAL LAW 89, 104 (1999) ("Many horses were sold to slaughter houses for as much as $1000 in 1998."); Worden, *supra* p. 2; WBTV Article, *supra* p. 2. National media report that at least two of the slaughterhouses killing horses to be eaten by humans in Europe and elsewhere are located in Texas. CNN has reported, for example, that horses auctioned in California "are often trucked to Texas slaughterhouses, and eventually end up in European and Asian meat markets and restaurants." Don Knapp, *California to vote on sale of horse[-]meat*, CNN, July 18, 1998, *available at* http://www.cnn.com/HEALTH/9807/18/horse.meat/ (last visited July 17, 2002); *see also* Worden, *supra* p. 2 (stating that in first quarter of 2001, 11,000 horses were killed in Texas, "home to two slaughterhouses," compared with 8,600 in the last quarter of 2000). *See generally* OFFICE OF HOUSE BILL ANALYSIS, BILL ANALYSIS, Tex. H.B. 1391, 77th Leg., R.S. (2001) (providing background on current law that prohibits sale of horse-meat and noting increase in practice of slaughtering horses in Texas to be consumed by humans).

Chapter 149 of the Agriculture Code criminalizes the slaughter of horses and sale of horse-meat for human consumption.[2] *See* TEX. AGRIC. CODE ANN. § 149.001 (Vernon Supp. 2002) (defining horse-meat as "flesh of an animal of the genus equus"). Section 149.002 makes the sale or possession of horse-meat as food for human consumption a criminal offense:

A person commits an offense if:

(1) the person sells, offers for sale, or exhibits for sale horse[]meat as food for human consumption; or

---

[2]We find nothing in state law that criminalizes the slaughter of horses and sale of horse-meat for purposes other than human consumption. *Cf.* OFFICE OF HOUSE BILL ANALYSIS, BILL ANALYSIS, Tex. H.B. 1391, 77th Leg., R.S. (2001) (stating that horses may be rendered, "which turns horse carcasses into products such as paint thinner, soap, or pet food").

> (2) the person possesses horse[-]meat with the intent to sell the horse[-]meat as food for human consumption.

*Id.* § 149.002; *see also* 7 MICHAEL J. MCCORMICK, THOMAS D. BLACKWELL, & BETTY BLACKWELL, TEXAS PRACTICE: CRIMINAL FORMS & TRIAL MANUAL § 32.32 (1995) (setting out complaint or indictment form for sale of horse-meat). Section 149.003 similarly criminalizes the transfer of horse-meat to a person who intends to sell it as food for human consumption:

> A person commits an offense if the person:
>
> > (1) transfers horse[-]meat to a person who intends to sell the horse[-]meat, offer or exhibit it for sale, or possess it for sale as food for human consumption; and
> >
> > (2) knows or in the exercise of reasonable discretion should know that the person receiving the horse[-]meat intends to sell the horse[-]meat, offer or exhibit it for sale, or possess it for sale as food for human consumption.

TEX. AGRIC. CODE ANN. § 149.003 (Vernon Supp. 2002); *see also* 7 MICHAEL J. MCCORMICK, THOMAS D. BLACKWELL, & BETTY BLACKWELL, TEXAS PRACTICE: CRIMINAL FORMS & TRIAL MANUAL § 32.33 (1995) (setting out complaint or indictment form for transfer of horse-meat). *See generally Gordy v. State*, 268 S.W.2d 126 (Tex. Crim. App. 1953) (regarding prosecution for unlawful transfer of horse-meat to person when transferor knew or should have known meat was intended for human consumption). A first offense may be punished by a fine of $1,000 or less, a jail term ranging from thirty days to two years, or both. *See* TEX. AGRIC. CODE ANN. § 149.005(a) (Vernon Supp. 2002). A subsequent offense may be punished by "imprisonment in the institutional division of the Texas Department of Criminal Justice for" two to five years. *Id.* § 149.005(b); *see id.* § 149.006 (requiring court to enjoin convicted slaughterer from "slaughtering animals, selling meat, transporting meat, or in any manner purveying meat to the public as food for human consumption"). Chapter 149 does not affect municipal ordinances regulating the sale or possession of horse-meat or the licensing of horse-meat dealers unless the ordinance "directly conflicts" with the chapter. *Id.* § 149.007.

To answer your first question, we conclude that chapter 149 of the Agriculture Code applies to horse slaughter plants in Texas that process, possess, sell, or transport horse-meat to foreign countries as food for human consumption in those countries. You ask specifically whether "[c]hapter 149 of the Texas Agriculture Code appl[ies] to horse slaughter plants in Texas [that] process, possess, sell[,] and transport horse[-]meat for human consumption in those countries." Request Letter, *supra* note 1, at 1. Section 149.002 explicitly makes it a crime to sell, offer to sell, or possess intending to sell horse-meat for human consumption. *See* TEX. AGRIC. CODE ANN. § 149.002 (Vernon Supp. 2002). Likewise, section 149.003 explicitly makes it a crime to transfer horse-meat to a person who intends to sell, offer for sale, or possess for sale the meat for human consumption or to transfer horse-meat to a person who, the seller should know "in the exercise of reasonable

discretion," intends to sell, to offer for sale, or to possess for sale the meat for human consumption. *See id.* § 149.003; *see also* TEX. GOV'T CODE ANN. § 311.005(2) (Vernon 1998) (defining "person" generally to include corporation, partnership, association, and individual). Neither section 149.002 nor section 149.003 hinge upon the location where the horse-meat will be consumed, be it in Texas or elsewhere.

Assuming that a slaughterer has the intent or knowledge specified in section 149.002 or 149.003, he or she may be prosecuted for violating these sections of the Agriculture Code. "A person acts intentionally, or with intent, with respect to the nature of [certain] conduct or to a result of [the] conduct when" the person consciously desires to "engage in the conduct or cause the result." TEX. PEN. CODE ANN. § 6.03(a) (Vernon 1994). "A person acts knowingly, or with knowledge, with respect to the nature of [certain] conduct or to circumstances surrounding [it] when [the person] is aware of the nature of [the] conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of [certain] conduct when [the person] is aware that [the] conduct is reasonably certain to cause the result." *Id.* § 6.03(b). As this office does not find facts in attorney general opinions, we cannot ascertain whether a person has the requisite intent or knowledge in a particular situation. *See, e. g.,* Tex. Att'y Gen. Op. Nos. JC-0480 (2002) at 5 (stating that determining whether person commits act intentionally or knowingly generally exceeds attorney general opinion's scope); DM-500 (1998) at 5 (stating, as matter of law, that whether publisher possesses requisite criminal intent in particular situation depends upon facts); Tex. Atty. Gen. LO-94-087, at 2 (stating that, to determine whether requisite intent, knowledge, or purpose are present, requires finding facts and cannot be performed in opinion process).

Given this conclusion, you ask whether "prosecution for violations under [c]hapter 149 [is] preempted or in any way limited by federal law." Request Letter, *supra* note 1, at 1. We conclude that the federal Meat Inspection Act, 21 U.S.C. ch. 12 (sections 601-695), does not preempt or limit prosecution under chapter 149 of the Texas Agriculture Code. The Department has suggested to you that sections 602, 610, 619, 644, 645, and 661, 21 U.S.C., which are within the federal Meat Inspection Act, preempt or limit state enforcement. *See id.* at 2. In a letter to us, however, the Department does not address preemption because the Department concludes that it lacks jurisdiction to enforce chapter 149.[3] We consider preemption under the federal Meat Inspection Act only. *See* 21 U.S.C. ch. 12 (2000).

Federal law may preempt state law expressly, *see Hyundai Motor Co. v. Alvarado,* 974 S.W.2d 1, 4 (Tex. 1998); Tex. Att'y Gen. Op. No. JC-0093 (1999) at 3 (quoting *Hyundai Motor Co.,* 974 S.W.2d at 4), or implicitly if the federal statute's scope "indicates that Congress intended federal law to occupy the field exclusively or when state law actually conflicts with federal law." *Hyundai Motor Co.,* 974 S.W.2d at 4; Tex. Att'y Gen. Op. No. JC-0093 (1999) at 3 (quoting *Hyundai Motor Co.,* 974 S.W.2d at 4); *see Chicago-Midwest Meat Ass'n v. City of Evanston,* 589 F.2d 278, 282 (7th

---

[3]Letter from Martin A. Hubert, Deputy Commissioner, Texas Department of Agriculture, to Honorable John Cornyn, Texas Attorney General, at 4 (Mar. 28, 2002) (on file with Opinion Committee) [hereinafter Department Brief].

Cir. 1978), *cert. denied*, 442 U.S. 946 (1979). Under the Supremacy Clause, article VI of the United States Constitution, the laws of the United States "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2. State law that conflicts with federal law is preempted and "'without effect.'" *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) (citing *M'Culloch v. Maryland*, 17 U.S. 316 (1819)) (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)). State law that is not expressly preempted, but that actually conflicts with federal law to the extent that a private party cannot comply with both state and federal law, is implicitly preempted. *See Chicago-Midwest Meat Ass'n*, 589 F.2d at 282; *Hyundai Motor Co.*, 974 S.W.2d at 4 (citations omitted); Tex. Att'y Gen. Op. No. JC-0093 (1999) at 3. State law that stands as an obstacle to accomplishing and executing Congress' purposes and objectives is analogously implicitly preempted. *See Chicago-Midwest Meat Ass'n*, 589 F.2d at 282; *Hyundai Motor Co.*, 974 S.W.2d at 4 (citations omitted); Tex. Att'y Gen. Op. No. JC-0093 (1999) at 3. Federal law may not supersede a state's "historic police powers . . . unless" Congress clearly and manifestly intended it to do so. *Hyundai Motor Co.*, 974 S.W.2d at 5 (citations omitted).

To protect the public health and welfare, the federal Meat Inspection Act regulates the inspection, labeling, and packaging of "meat and meat food products." 21 U.S.C. § 602 (2000); *accord Chicago-Midwest Meat Ass'n*, 589 F.2d at 282 (quoting 21 U.S.C. § 661(a)) ("Congress . . . designed the [Meat Inspection] Act to 'protect the consuming public from meat and meat food products that are adulterated or misbranded.'"). Each animal, including a horse, entering a "slaughtering, packing, meat-canning, rendering, or similar establishment in which [it is] to be slaughtered" for human consumption "and the meat and meat food products thereof . . . to be used in commerce" must be inspected. 21 U.S.C. § 603(a) (2000); *see id.* § 641 (prohibiting subchapter I inspection at establishment for slaughter of horses if meat or meat food product is "not intended for use as human food"). Inspected meat and meat food products must be labeled and packaged according to federal requirements. *See id.* § 607(a)-(c). Neither live animals (including horses) that will die by means other than by slaughter nor animal carcasses may be received or transported in commerce except in compliance with federal regulations assuring that the animals, "or the unwholesome parts or products thereof, will be prevented from being used for human food purposes." *Id.* § 644. The United States Secretary of Agriculture may develop and administer a meat inspection program in conjunction with an appropriate state agency. *See id.* § 661(a)(1). A state is barred from "developing regulations 'in addition to, or different' from federal regulations applicable 'to [p]remises, facilities and operations of any establishment'" that must be inspected under the federal law. *Chicago-Midwest Meat Ass'n*, 589 F.2d at 283 (quoting 21 U.S.C. § 678).

We conclude, based on our review of federal law, that 21 U.S.C. chapter 12 does not preempt sections 149.002 and 149.003 of the Agriculture Code. Federal statutes do not require a state to permit the slaughter of horses within the state for human consumption in that state or elsewhere, even though horse-meat may be included within that class of meat that is "capable of use as human food" under federal law. *See* 21 U.S.C. § 601(j), (k) (2000). The state laws prohibiting the slaughtering of horses for human consumption are not additional to or different from federal statutes relating to a slaughterhouse's premises, facilities, or operation; rather, the state laws relate to the

production, sale, and transfer of horse-meat. Also, the federal inspection and labeling requirements do not implicitly preempt the Texas prohibition. The federal statute's scope does not clearly indicate that Congress intended to occupy the field with respect to determining the kinds of animals that may be slaughtered for human consumption. Instead, in those states that permit horse-meat to be produced or sold as food for human consumption, the meat must comply with 21 U.S.C. chapter 12. In this way, a regulated party may comply with both federal and state statutes with respect to horse slaughter. *See Chicago Midwest Meat Ass'n*, 589 F.2d at 282 (stating that state law conflicts with federal law when private party cannot comply with both).

Finally, you ask whether the Department may "enforce violations of chapter 149 of the Texas Agriculture Code." Request Letter, *supra* note 1, at 1. If it does not, you continue, "which state agency has that power?" *Id.* We conclude that the Department has no power to enforce violations of chapter 149 of the Agriculture Code. Rather, a local prosecutor may investigate as well as prosecute alleged violations, and the Commissioner of Health may inspect slaughterhouses that are alleged to be killing horses for human consumption. Because chapter 149 itself does not designate an enforcer, however, we find our answer outside chapter 149.

We have received several briefs suggesting that section 12.001, which requires the Department to "execute all applicable laws relating to agriculture," requires the Department to enforce the violations.[4] The Department disagrees, stating that the term "applicable" in section 12.001 does not include every law that may be related to agriculture: "the term 'applicable' would be superfluous if the legislature meant that the department is to execute every law relating to agriculture." *See* Department Brief, *supra* note 3, at 3.

Although section 12.001 authorizes the Department to "execute" various laws, it does not provide the Department with any authority, express or implicit, to prosecute a criminal action or to investigate an alleged violation. A state agency has only those powers that are explicitly or implicitly delegated to it. *See R.R. Comm'n v. Lone Star Gas Co.*, 844 S.W.2d 679, 685 (Tex. 1992); *6th & Neches, L.L.C. v. Aldridge*, 992 S.W.2d 684, 687 (Tex. App.–Austin 1999, pet. denied); Tex. Att'y Gen. Op. Nos. JC-0418 (2001) at 6, JC-0416 (2001) at 5, JC-0324 (2001) at 1. To "execute" means to "perform or complete." BLACK'S LAW DICTIONARY 589 (7th ed. 1999). The Department's

---

[4]*See* Letter from Kevin L. O'Neal, Porter & Hedges, L.L.P., representing Habitat for Horses, Inc. to Honorable John Cornyn, Texas Attorney General, at 6 (Mar. 26, 2002) (on file with Opinion Committee); Letter from Donald D. Feare, Attorney & Counselor at Law, representing Lone Star Equine Rescue, at 6-7 (Apr. 11, 2002) (on file with Opinion Committee) (arguing that Department of Agriculture is only agency with sufficient access and knowledge to enforce horse-meat provisions); Letter from Robert L. Trimble, Attorney & Counselor, representing Texas Humane Legislation Network, Texas Buckskin Horse Ass'n, and Common Ground Found., to Honorable John Cornyn, Texas Attorney General, at 8 (Mar. 26, 2002) (on file with Opinion Committee) (stating that because section 12.001 requires Department of Agriculture to "execute . . . applicable laws relating to agriculture," Department has implied powers to do so); Letter from Dawn Elise Reveley, Attorney & Counselor, representing Favoring Winds Ranch, Silver Phoenix Horses, Spirits of the Wind Equine Facility & Rescue, Texas Spirits of the Wind Equestrian Drill Team, Texas Wildfire Express Drill Team, and Tres Oak Ranch, to Honorable John Cornyn, Texas Attorney General, at 5 (Mar. 26, 2002) (on file with Opinion Committee) (stating that section 12.001 applies because chapter 149 relates to agriculture as commonly defined).

authority to execute laws relating to agriculture is not tantamount to authority to prosecute criminal violations of that law. More importantly, the Texas Constitution places the authority to prosecute with county, district, and criminal district attorneys. *See* TEX. CONST. art. V, § 21; *infra* at 8.

Moreover, chapter 149 traditionally relates not to agriculture, but to public health. While the term "agriculture" can be defined to encompass the raising of livestock, *see* TEX. AGRIC. CODE ANN. § 2.001(Vernon Supp. 2002) (defining "agriculture" to include "raising or keeping of livestock or poultry"); I OXFORD ENGLISH DICTIONARY 267 (2d ed. 1989) (defining "agriculture" as "[t]he science and art of cultivating the soil; including the allied pursuits of gathering in the crops and rearing live stock; tillage, husbandry, farming (in the widest sense),"[5] the Department never has had authority to enforce the substance of chapter 149. The substance of section 12.001, authorizing the Department to execute applicable laws relating to agriculture, was adopted in 1907, and it originally did not encompass laws relating to slaughterhouses. *See* Act of Apr. 4, 1907, 30th Leg., R.S., ch. 59, § 11, 1907 Tex. Gen. Laws 127, 128. Most of the Commissioner's twelve duties pertained to the subject of products other than meat, such as grain, cotton, fruit, and wool. *See id.* at 128-30. The Commissioner's express duties vis-à-vis livestock consisted of "enquir[ing] into the subjects connected with stockraising, dairying and poultry; the obtaining and rearing of such domestic animals and fowls as are of most value; and the breeding and improvement of the same" and "encourag[ing] the raising of fish and the culture of bees." *Id.* at 129; *cf.* TEX. AGRIC. CODE ANN. § 12.009(a) (Vernon 1995) (setting forth Department's duty to "inquire into subjects relating to stock raising").

When the statutory predecessor to chapter 149 was originally adopted in 1949, the legislature placed jurisdiction to investigate within the Board of Health's powers as a matter related to the public health. *See* Act of Mar. 8, 1949, 51st Leg., R.S., ch. 45, § 9, 1949 Tex. Gen. Laws 78, 79. The new law, codified as article 719e of Vernon's Texas Penal Code (now repealed), was placed in the midst of title 12, chapter 2, pertaining to public health. *See Neill v. State*, 229 S.W.2d 361, 362 (Tex. Crim. App. 1950) (noting adoption of 1949 legislation and its effect on prior law). While the 1949 statute does not expressly authorize a particular entity to enforce it, a 1950 news article quotes the "state health officer," Dr. George W. Cox, as stating that the Department of Health was prosecuting "every violator we could find." *Health Officer Tells How to Stop Horse[-]Meat Sales*,

---

[5]For other statutory definitions, see TEX. LAB. CODE ANN. § 51.003(b) (Vernon 1996) (defining "employment in agriculture" with respect to prohibition of certain child labor as "engaged in producing crops or livestock" and including "cultivating and tilling the soil"; "producing, cultivating, growing, and harvesting an agricultural or horticultural commodity"; "dairying"; and "raising livestock, bees, fur-bearing animals, or poultry"); *id.* § 62.002 (defining "agriculture" for purposes of minimum wage laws to include, among other things, "raising livestock" and "any practice performed by a farmer or on a farm as an incident to or in conjunction with farming operations"); TEX. TAX CODE ANN. § 23.42(d)(1) (Vernon 2001) (defining "agriculture" for purposes of determining whether land qualifies for agricultural-use tax benefit as "the use of land to produce plant or animal products . . . under natural conditions," but not including "the processing of plant or animal products after harvesting"); TEX. WATER CODE ANN. § 11.002(12) (Vernon Supp. 2002) (defining "agriculture" for water-rights purposes to mean, among other things, "raising, feeding, or keeping animals for breeding purposes" or to produce food and "raising or keeping equine animals"); *id.* § 36.001(19)(C), (F) (same for purposes of groundwater conservation districts).

DALLAS MORNING NEWS, Mar. 17, 1950. A 1952 news article also quotes the same Dr. Cox, "state health officer," as saying that sausage containing horse-meat "can't be sold in Texas": "We have labeling laws in this state that are going to be enforced by the State Health Department." *Neigh? Nay! Texans Can't Horse Around with Sausage,* DALLAS MORNING NEWS, May 23, 1952. The substance of article 719e was transferred in 1973 to the Revised Civil Statutes and again placed with statutes related to public health. *See* Act of May 24, 1973, 63d Leg., R.S., ch. 399, 1973 Tex. Gen. Laws 883, 996c (former article 4476-3a of the Revised Civil Statutes). The statute was codified as chapter 149 of the Agriculture Code in 1991, but its codification was intended to be nonsubstantive. *See* Act of Mar. 25, 1991, 72d Leg., R.S., ch. 16, §§ 1.01(1), 2.01, 1991 Tex. Gen. Laws 244, 244-46.

Having determined that the Department has no authority to investigate or prosecute alleged violations of chapter 149 of the Agriculture Code, we conclude next that a county or district prosecutor may investigate and prosecute alleged criminal violations of chapter 149. Because section 149.005 of the Agriculture Code establishes a penalty for a violation of chapter 149 of a maximum fine of $1000, a jail term of thirty days to two years, or both, the crime is a Class B misdemeanor. *See* TEX. PEN. CODE ANN. § 12.41(2) (Vernon 1994). Original jurisdiction of such an offense lies in a county court or, concurrently, a criminal district court. *See* TEX. CODE CRIM. PROC. ANN. arts. 4.01, 4.05, 4.07 (Vernon Supp. 2002); TEX. GOV'T CODE ANN. §§ 24.901, 24.910, 24.920, 26.045 (Vernon 1988 & Supp. 2002). A county, district, or criminal district attorney represents the state in criminal actions in the lower courts, depending upon the particular attorney's statutory authority. *See* TEX. CONST. art. V, § 21; TEX. GOV'T CODE ANN. chs. 43-45 (Vernon 1988 & Supp. 2002); *Saldano v. State,* 70 S.W.3d 873, 876 (Tex. Crim. App. 2002) (en banc) (stating that duty of criminal prosecution in trial courts of records belongs to county attorney, district attorney, or criminal district attorney); *Aguirre v. State.* 22 S.W.3d 463, 469 (Tex. Crim. App. 1999) (en banc) (stating that county attorney has right and duty to prosecute in county court). For example, the Tarrant County Criminal District Attorney represents the state in all criminal matters before the county's criminal district courts and the Tarrant County Court. *See* TEX. GOV'T CODE ANN. § 44.320(a) (Vernon 1988). A county or criminal district attorney may request the attorney general's assistance in a prosecution. *See id.* § 402.028 (Vernon 1998).

Local prosecutors have access to numerous, on-going records related to the slaughter of horses within a county that may provide evidence of a violation of chapter 149. Under chapter 148 of the Agriculture Code, a slaughterer must register his or her name and intent to engage in business as a slaughterer with the county clerk. *See* TEX. AGRIC. CODE ANN. § 148.002(a) (Vernon 1982). A slaughterer must keep a record, in a bound volume, of all livestock "purchased or slaughtered," describing the livestock "by kind, color, sex, probable age, [and] any marks or brands";[6] identifying the name and address of the person from whom the slaughterer purchased or acquired the livestock;

---

[6]Marks and brands are registered with the county clerk of the county in which the animal is located. *See* TEX. AGRIC. CODE ANN. §§ 144.001(b), .041(b) (Vernon Supp. 2002) (permitting horse owner to use identifying marks and requiring horse owner to register identifying mark with county clerk); TEX. LOC. GOV'T CODE ANN. §§ 118.011(a)(9), .020 (Vernon 1999 & Supp. 2002) (requiring county clerk to charge $5 fee for registering brand).

in certain circumstances, to identify the individual who delivered the livestock, along with "the make, model, and license plate number of the vehicle in which the livestock was delivered"; and indicate the date the livestock was delivered to the slaughterer. *Id.* § 148.011 (Vernon Supp. 2002). A slaughterer must report "[a]t each regular meeting of the county commissioners court" "the number of animals slaughtered" since the last meeting; each animal's "color, age, sex," and identifying marks and brands; "a bill of sale or written conveyance for each animal purchased for slaughter"; and "a notation of any slaughtered animals" that the slaughterer raised. *Id.* § 148.012. A horse slaughterer in particular must file a similar monthly report with the county clerk. *See id.* § 148.012(c); *see also id.* § 148.012(d) (requiring slaughterer to file monthly report on first day of each month with county clerk where horses were slaughtered).

Because the Texas Commissioner of Health has limited authority to inspect slaughterhouses, he or she may be able to assist a local prosecutor. Chapter 433 of the Health and Safety Code authorizes the Commissioner of Health to inspect slaughterhouses producing meat, "solely for intrastate commerce," for human consumption. *See* TEX. HEALTH & SAFETY CODE ANN. ch. 433 (Vernon 2001 & Supp. 2002); *see also* 25 TEX. ADMIN. CODE § 221.13 (2001) (Tex. Dep't of Health, Meat Safety Assurance) (prescribing administrative penalties for violations of Health and Safety Code chapter 433). While the Commissioner may not inspect "an establishment for the slaughter of livestock or the preparation of carcasses, parts of carcasses, or products of livestock if the articles are not intended for use as human food," TEX. HEALTH & SAFETY CODE ANN. § 433.029(1) (Vernon 2001), the question you pose presumes that the horses are intended for human consumption, although the meat is for interstate, not intrastate, commerce. Request Letter, *supra* note 1, at 1. We further understand that the Texas Department of Health may inspect meat bound for interstate commerce in federal plants on behalf of the United States Department of Agriculture. *See* TEX. DEP'T OF HEALTH, MEAT SAFETY ASSURANCE DIV., POLICY & PROCEDURE GUIDE 92-93 (Oct. 2001), *available at* http://www.tdh.state.tx.us/bfds/msa/pdf/pguide.pdf (last visited July 17, 2002); *see also* 21 U.S.C. § 661(a)(1) (2000) (authorizing United States Secretary of Agriculture to cooperate with "the appropriate State agency" to develop and administer state meat inspection program). The Commissioner of Health does not appear to have any authority to prosecute a criminal action for a violation of chapter 149 of the Agriculture Code, however.

## S U M M A R Y

Chapter 149 of the Agriculture Code applies to slaughter-houses in Texas that process, possess, sell, or transport horse-meat to foreign countries as food for human consumption if the slaughterer has the requisite intent. The federal Meat Inspection Act, 21 U.S.C. ch. 12, does not appear to preempt prosecution for violations of chapter 149.

The Texas Department of Agriculture lacks authority to investigate and prosecute alleged violations of chapter 149. A county or criminal district attorney may investigate and prosecute alleged violations of chapter 149.

Very truly yours,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee